560 F.2d 1184
 WALKER MANUFACTURING COMPANY, a Division of Tenneco, Inc., Appellant,
v.
DICKERSON, INC., Appellee.
SEABOARD SURETY COMPANY, a corporation, Defendant,
v.
PIEDMONT ENGINEERING & ARCHITECTS, INC., also d/b/a Piedmont
Engineers& Architects, Edward's Roofing & Sheet Metal Co., a
corp., also d/b/a Edward's Sheet Metal Co., the Celotex
Corp., Third-party defendants.
 No. 76-2312.
 United States Court of Appeals,
Fourth Circuit.
 Argued May 3, 1977.
Decided Sept. 1, 1977.
 
 James P. Erwin, Jr., Asheville, N. C. (McGuire, Wood, Erwin & Crow, Asheville, N. C., on brief), for appellant.
 Robert B. Cordle, Charlotte, N. C. (Helms, Mulliss & Johnston, Charlotte, N. C., Koy E. Dawkins, Dawkins & Glass, Monroe, N. C., on brief), for appellee.
 Before WINTER, BUTZNER and HALL, Circuit Judges.
 WINTER, Circuit Judge:
 
 
 1
 Walker Manufacturing Co. (Walker) appeals from an order of the district court declaring that its action for breach of contract was time-barred, and directing a verdict for the defendant, Dickerson, Incorporated (Dickerson). Walker maintains that (1) the district court applied the incorrect statute of limitations under North Carolina law; and (2) improperly withheld the issue of equitable estoppel from jury consideration. We reverse and remand, with instructions.
 
 I.
 
 2
 On April 21, 1969, Walker entered into a written contract with Dickerson, a general contractor, for the construction of a manufacturing, warehouse and office building at Arden, North Carolina. The roofing specifications called for the installation over a metal roof deck of a "twenty year bonded tar and slag roof," which would be "absolutely watertight" when the installation was complete.
 
 
 3
 The contract conformed to a model agreement, drafted by the American Institute of Architects. As general contractor, Dickerson was held responsible
 
 
 4
 for the acts and omissions of all (Dickerson) employees and all Subcontractors, their agents and employees, and all other persons performing any of the Work under a Contract with (Dickerson).
 
 
 5
 Payments were to be made periodically, with the final payment constituting
 
 
 6
 a waiver of all claims by (Walker) except those arising from:
 
 
 7
 .2 faulty or defective Work appearing after Substantial Completion, (or)
 
 
 8
 .3 failure of the Work to comply with the requirements of the Contract Documents, or
 
 
 9
 .4 terms of any special guarantees required by the Contract Documents.
 
 
 10
 The contract was signed by Dickerson's president, attested to by its secretary, and stamped with its corporate seal. Walker signed by its executive vice president and assistant secretary, but its seal was not affixed.
 
 
 11
 Construction began in 1969, and was completed by May of 1970. The installation of roofing was performed by a subcontractor, Edwards Roofing & Sheet Metal Co., Inc., of Marshville, North Carolina (Edwards). When the roofing work was completed, Edwards gave Dickerson and Walker a one-year guaranty or warranty of good workmanship, extending from May 25, 1970 until May 24, 1971.
 
 
 12
 During the warranty period, blisters and leaks began to appear in the roofing membrane. Edwards unsuccessfully made repeated attempts, at its own expense, to locate and correct the problem, and Edwards ceased its efforts at correction when the warranty expired. Walker then complained to Dickerson, as general contractor. In a letter dated June 4, 1971, Walker wrote to Dickerson asserting that Dickerson was liable for correction of the persistent roof problem. Dickerson responded, assuring Walker that Dickerson would discharge whatever responsibilities were on it.
 
 
 13
 After Walker renewed its complaint, Dickerson arranged to have the roof inspected by a consulting engineer. The engineer's report placed blame upon the type of materials used and concluded that extensive repairs would be needed to correct the condition. Walker and Dickerson negotiated about what should be done and Dickerson made alternative proposals: to undertake certain repairs, or to make a cash settlement in an amount equal to the cost of the repairs that Dickerson was willing to undertake. After further discussion, Walker rejected both proposals as "not provid(ing) us a roof equivalent to what we contracted for."
 
 
 14
 Ultimately Dickerson made further repairs, but they were largely unsuccessful. The parties then negotiated a further settlement. They apparently discussed an agreement that Dickerson would pay half of the cost of further repairs ($12,500); but when Dickerson tendered its check in that amount, Walker declined to accept it and filed suit for breach of contract.
 
 
 15
 The complaint, filed August 6, 1975, alleged, in essence, that blisters and leaks in Walker's roof were due to faulty construction by Dickerson and its subcontractor. Walker claimed an award of $650,000 for breach of contract, property damage, and interruptions within the Arden plant.
 
 
 16
 The action was tried before a jury in July of 1976. At the end of Walker's evidence, the district court granted Dickerson's motion for a directed verdict. In a written order filed July 14, 1976, the district court ruled that (1) Walker's action was time-barred under the applicable statute of limitations; and (2) sufficient facts were not proved to permit the jury to consider application of the doctrine of equitable estoppel.
 
 
 17
 Since federal jurisdiction was grounded upon diversity of citizenship, the district court applied the substantive law of North Carolina, viz: N.C.Gen.Stat. § 1-52(1), which provides that
 
 
 18
 within three years (of its accrual,) an action (shall be brought)
 
 
 19
 (1) Upon a contract, obligation, or liability arising out of a contract, express or implied, except those mentioned in the preceding sections.
 
 
 20
 Walker's cause of action was ruled to have accrued in May of 1970 (when the building was completed) or on May 24, 1971 (when the Edwards warranty expired). Since the complaint was filed on August 6, 1975, or more than three years after either date of accrual, the action was held to be untimely.
 
 II.
 
 21
 Before us, Walker contends that its action is not governed by § 1-52(1). Instead, reliance is placed upon N.C.Gen.Stat. § 1-47(2), which provides that
 
 
 22
 within ten years (of its accrual,) an action (shall be brought)
 
 
 23
 (2) Upon a sealed instrument against the principal thereto.
 
 
 24
 Walker's cause of action is based upon the construction contract of April 21, 1969. That contract, in turn, was signed by Dickerson's president and stamped with its corporate seal. Walker therefore contends that it is a "sealed instrument," that § 1-47(2) applies, and that its action was timely.
 
 
 25
 If Walker is correct that the contract, at least as to Dickerson, was a sealed instrument, Walker's argument appears to be sound. But we are unwilling so to rule in the present posture of the record. When the case was tried in the district court, Walker did not assert that it sued on a sealed instrument, and neither party called the presence of the seal below Dickerson's name or § 1-47(2) to the attention of the district judge. Under North Carolina law, it is unclear whether the mere presence of a corporate seal is conclusive that the instrument was "sealed" within the meaning of § 1-47(2). The North Carolina cases indicate that proof may be received as to the intention of the person purportedly employing a seal as to whether he intended that the instrument be sealed.[1]
 
 
 26
 We therefore conclude that the district court's order must be reversed and the case remanded for a determination of whether the ten-year period of limitations has any application to the case at bar.[2]
 
 III.
 
 27
 On remand, the district court must also correct its erroneous ruling with regard to the possible application of the doctrine of equitable estoppel, unless, of course, this issue is rendered moot by the finding that the action is founded upon a sealed instrument and thus not time-barred under the ten-year statute.
 
 
 28
 North Carolina recognizes the doctrine of equitable estoppel:
 
 
 29
 The lapse of time, when properly pleaded, is a technical legal defense. Nevertheless, equity will deny the right to assert that defense when delay has been induced by acts, representations, or conduct, the repudiation of which would amount to a breach of good faith. "The doctrine of equitable estoppel is based on an application of the golden rule to the everyday affairs of men. It requires that one should do unto others as, in equity and good conscience, he would have them do unto him, if their positions were reversed. * * * Its compulsion is one of fair play." Nowell v. Great Atlantic & Pacific Tea Co., 250 N.C. 575, 108 S.E.2d 889, 891 (1959), quoting from McNeely v. Walters, 211 N.C. 112, 189 S.E. 114, 115 (1937).
 
 
 30
 If the doctrine of equitable estoppel is applicable, the statute of limitations would not begin to run until the acts or representations, causing plaintiff's delay, had ceased.[3]
 
 
 31
 The test for directing a verdictis not whether there is any evidence, but whether "there are no controverted issues of fact upon which reasonable men could differ." Proctor v. Colonial Refrigerated Transportation, Inc., 494 F.2d 89, 93 (4 Cir. 1974); Pogue v. Retail Credit Co., 453 F.2d 336, 338 (4 Cir. 1972), cert. denied, 409 U.S. 1109, 93 S.Ct. 910, 34 L.Ed.2d 689 rehearing denied, 410 U.S. 960, 93 S.Ct. 1417, 35 L.Ed.2d 695 (1973).
 
 
 32
 We believe that sufficient facts existed so that reasonable men could differ on the issue of equitable estoppel; a directed verdict should therefore not have been granted.
 
 
 33
 The correspondence between the parties clearly indicates that Dickerson was receptive to some form of settlement. When first advised of the roofing problem, Dickerson assured Walker that "we (Dickerson) will take care of any deficiencies which are our responsibility regardless of the warranty expiration date." Dickerson later advanced two proposals concerning the leaky roof. Dickerson offered (1) to replace defective areas with similar roofing materials, at Dickerson's expense; or (2) a cash sum equaling the value of such repairs. When Walker rejected both proposals, Dickerson continued to negotiate until May of 1975, when the basis for a final agreement was discussed.
 
 
 34
 Dickerson's conduct also indicated a desire to resolve differences and to avoid litigation. In the fall of 1971, Dickerson arranged to have the roof inspected, at its own expense, by a qualified consulting engineer. Between the fall of 1972 and the fall of 1974, Dickerson made certain temporary repairs of the roofing membrane.
 
 
 35
 In sum, reasonable men could have concluded that, until a date less than three years preceding the filing of suit, Dickerson induced Walker to forego litigation and to compromise their dispute.
 
 
 36
 REVERSED AND REMANDED.
 
 
 
 [1]
 In McGowan v. Beach, 242 N.C. 73, 86 S.E.2d 763 (1955), the court held that when "a seal appear(s) upon an instrument, opposite the name of the maker, in the place where the seal belongs, (it) will in the absence of proof that the maker intended otherwise, be valid as a seal." 86 S.E.2d at 765. The case construed an acknowledgment of a debt, and did not concern itself with the role or definition of "seals" under § 1-47(2)
 Finally, in Security National Bank v. Educators Mutual Life Ins. Co., 265 N.C. 86, 143 S.E.2d 270 (1965), the court remanded an action to recover commissions under a contract. The contract bore the seal of plaintiff's decedent but did not bear the seal of defendant insurance company. The lower court determined that the contract was a sealed instrument and that § 1-47(2) applied. The North Carolina Supreme Court reversed and remanded. After announcing that § 1-47(2) applied to actions "(u)pon a sealed instrument, against the principal thereto," the case was returned to the lower court (in order to determine if defendant had adopted the seal as its own, allowing plaintiff to rely on § 1-47(2)).
 
 
 [2]
 Dickerson argues that we may not consider the ten-year statute at all, since it was never advanced at trial. We disagree
 Ordinarily, of course, we do not pass on questions that were not presented to or considered by the district court, but orderly rules of procedure do not require sacrifice of the rules of fundamental justice. "Indeed, if deemed necessary to reach the correct result, an appellate court may sua sponte consider points not presented to the district court and not even raised on appeal by any party." Washington Gas Light Co. v. Virginia Electric & Power Co., 4th Cir., 438 F.2d 248, 250-51. . . . (A)nd it has been said that an exception to the general rule of non-reviewability exists where a pertinent statute has been overlooked in the trial court. Ricard v. Burch, 529 F.2d 214, 216 (4th Cir. 1975).
 
 
 [3]
 See Nowell v. Great Atlantic & Pacific Tea Co., 250 N.C. 575, 108 S.E.2d 889 (1959). In Nowell, plaintiffs sued for damages resulting from faulty construction of a building and a parking lot. The building, constructed by the appellant, was leased to the Great Atlantic & Pacific Tea Co
 The building was delivered and appellant paid on April 1, 1951. Some months earlier, in November of 1950, a controversy arose between plaintiffs and appellant with respect to the waterproofing of the walls and floors of the building, then under construction. On February 26, 1951, appellant advised plaintiffs that
 We have found the trouble and made the necessary corrections. I am certain there will be no water or moisture coming through these walls in the future. However, should there be, my company will be entirely responsible and we will remedy the situation if it should occur.
 After the building was completed and delivered, structural defects continued to appear. Pursuant to its earlier "guarantee," appellant made various repairs. Finally, on February 22, 1954, appellant disclaimed any further responsibility. Plaintiffs brought their action for damages, and appellant pleaded the statute of limitations. Since the action was filed on August 23, 1956, or more than three years after the building was delivered, appellant contended that it was untimely. The court, however, took notice of appellant's conduct, especially its assurance that structural defects would be rectified. The period of limitations was therefore keyed to February 22, 1954, and the action declared to be timely.