**Darryl R. FREY, Appellant,**

v.

**Charles M. PANZA, Jr.**

**No. 77–2586.**

United States Court of Appeals, Third Circuit.

Argued Aug. 7, 1978.

Decided Aug. 31, 1978.

Maurice A. Nernberg, Jr., W. Thomas Laffey, Jr., Nernberg & Nernberg, Pittsburgh, Pa., for appellant.

James R. Hartline, Thomson, Rhodes & Grigsby, Pittsburgh, Pa., Robert R. Graff, Mohan & Graff, Pittsburgh, Pa., for appellee.

Before ALDISERT, VAN DUSEN and HUNTER, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

This case comes before the court on appeal from a district court order granting the defendant's motion to dismiss under F.R.Civ.P. 12(b)(6). The complaint alleged that the plaintiff, Darryl R. Frey, was a home builder who, on March 1, 1977, was in possession of a number of properties upon which he was constructing houses. These properties were located in Hampton Township, Pennsylvania, which had adopted the 1975 Basic Building Code of the Building Officials and Code Administrators International (BOCA Code). At all times pertinent to this case, defendant Charles M. Panza, Jr., was Hampton Township's duly appointed building official, as provided in the Code.

Section 113.1 of the BOCA Code states that any person seeking to initiate construction within the township must first obtain a building permit from the municipality's building official. The Code at § 115.2 provides that, except where otherwise stipulated or legally granted, "[t]he permit shall be a license to proceed with the work and shall

not be construed as authority to violate, cancel, or set aside any of the provisions of this code . . . ." These Code provisions include § 112.2, which authorizes the municipal building official "to enter at any reasonable hour any building, structure or premises in the jurisdiction to enforce the provisions of this code."

The complaint in this action further alleged that on March 1, 1977, Charles Panza entered certain dwellings being constructed by Darryl Frey and inspected them for building code violations. As a result of these inspections, the complaint asserted, the building official issued three citations charging violations of the BOCA Code. Plaintiff did not allege that he was ever convicted of these violations or that any criminal charges were pending against him.

Plaintiff instituted this action under 42 U.S.C. § 1983, charging that the defendant's warrantless and unconsented inspections [1] of these uncompleted structures had violated plaintiff's Fourth Amendment rights. The district court entered an order on November 2, 1977, dismissing the complaint on the ground that no case had been called to its attention in which a court had extended Fourth Amendment protection to uncompleted and unoccupied structures. The accompanying memorandum opinion stated:

"[T]he Court seriously questions the propriety of extending Fourth Amendment protections to premises where the expectations of privacy can only be *de minimis.*

"In the absence of persuasive authority, the Court concludes that uncompleted and unoccupied structures, such as those involved herein, are not within the ambit of the Fourth Amendment."

*Frey v. Panza,* Civil No. 77–769 (W.D.Pa., Nov. 2, 1977) (reproduced at 19a, 22a).

Subsequent to this district court decision, the Supreme Court of the United States has decided the cases of *Marshall v. Barlow's,*

*Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), and *Michigan v. Tyler,* 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978), which state its views concerning the Fourth Amendment's application in areas of the law similar to that involved in this case. In both these cases, the Court reaffirmed its earlier decisions in *Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), and *See v. City of Seattle,* 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967), emphasizing the following "governing principle":

"'[E]xcept in certain carefully defined classes of cases, a search of private property without proper consent is "unreasonable" unless it has been authorized by a valid search warrant.'"

*Barlow's,* 436 U.S. at 312, 98 S.Ct. at 1820; *Tyler,* 436 U.S. at 506, 98 S.Ct. 1942; *both quoting Camara,* 387 U.S. at 528–29, 87 S.Ct. 1727. On the other hand, the Supreme Court in *Barlow's* and *Tyler* recognized that the class of exceptions from the general warrant requirement includes cases involving enterprises with "a long tradition of close government supervision, of which any person who chooses to enter such a business must already be aware," *Barlow's,* 436 U.S. at 313, 98 S.Ct. at 1821, *citing United States v. Biswell,* 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972); *Colonnade Catering Corp. v. United States,* 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970); and cases involving a "compelling need for official action," *Tyler,* 436 U.S. at 509, 98 S.Ct. 1942.

Under these circumstances, we will vacate the district court order and remand the case for further consideration in light of these two recent Supreme Court decisions. The district court will have the discretion to supplement the record with stipulations or factual findings which may aid it in applying these decisions to a record more fully

---

1. To implement the Code, the Hampton Township Building Permit sets forth four required inspections: (1) footer inspection; (2) foundation inspection; (3) framing inspection; and (4) final inspection. Plaintiff's Exhibit 8, Hearing on Preliminary Injunction, August 19, 1977. In addition to these four announced inspections, the building inspector has the right under the Code to make unannounced, "stop-by" inspections without a warrant. It is the latter class of inspections to which plaintiff objects.

developed than that now before us. Each party shall bear its own costs.