**UNITED STATES of America,**
**Appellant,**

v.

**Henry A. MOLT, Jr.**

**Nos. 78–1254 to 78–1259.**

United States Court of Appeals,
Third Circuit.

Argued Sept. 8, 1978.
Decided Dec. 28, 1978.

Robert N. deLuca, U. S. Atty., Walter S. Batty, Jr., Asst. U. S. Atty., Chief, Appellate Division, Thomas E. Mellon, Jr., Asst. U. S. Atty., Philadelphia, Pa., for appellant.

Edward F. Kane, Norristown, Pa., for appellee.

* Honorable Herbert J. Stern, of the United States District Court for the District of New Jersey, sitting by designation.

1. *§ 1509. Examination of importer and others*
Appropriate customs officers may cite to appear before them or any of them and to examine upon oath, which said officers or any of them are authorized to administer, any owner, importer, consignee, agent, or other person upon any matter or thing which they, or any of them, may deem material respecting any imported merchandise then under consideration or previously imported within one year, in ascertaining the classification or the value thereof or the rate or amount of duty; and they, or any of them, may require the production of any letters, accounts, contracts, invoices, or other documents relating to said merchandise, and may require such testimony to be reduced to writ-

Before ALDISERT and HIGGINBOT-HAM, Circuit Judges, and STERN, District Judge.*

OPINION OF THE COURT

ALDISERT, Circuit Judge.

This government appeal from a suppression order, pursuant to 18 U.S.C. § 3731, requires us to review the district court's interpretation of the Tariff Act of 1930, 19 U.S.C. §§ 1202–1654, as amended, and the court's finding that appellee did not consent to the search and seizure of importation records and imported merchandise. We find no error and affirm.

I.

Appellee Molt was charged with criminal violation of customs and wildlife conservation laws. On January 7, 1975, two United States customs agents visited Molt's business establishment, the Philadelphia Reptile Exchange, for a routine examination of his records but Molt informed them that his records were at home. An appointment for Molt to take his records to the customs house was scheduled for January 13, but he failed to appear. On the following day, the two agents returned to the Reptile Exchange and again asked to see appellee's importation records. He inquired as to the agents' authority to inspect his records; the agents answered by showing him a copy of 19 U.S.C. §§ 1509, 1510, and 1511.[1] Molt

ing, and when so taken it shall be filed and preserved, under such rules as the United States Customs Court may prescribe, and such evidence may be given consideration in subsequent proceedings relating to such merchandise.
*§ 1510. Penalties for refusal to give testimony*
If any person so cited to appear shall neglect or refuse to attend, or shall decline to answer, or shall refuse to answer in writing any interrogatories, and subscribe his name to his deposition, or to produce such papers when so required by a judge of the United States Customs Court, or an appropriate customs officer, he shall be liable to a penalty of not less than $20 nor more than $500; and if such person be the owner, importer, or consignee, the appraisement last made of such merchandise, whether made by an appropriate customs officer, or, a judge of the United

read the statutes and said· he found it hard to believe that the agents could search his office without a warrant. He telephoned his attorney but the attorney was out of his office. While waiting for the return call, Molt asked what would happen if he did not consent to the inspection. One of the agents responded:

> "Let me make it clear to you. Number one, you are not under arrest. Number two, you are not being detained. You are not under any rule or order to show us your records and you could tell us to get out of your store and we'll have to go." And I said, "But if I do leave," I said, "It will be for the purpose of getting into my car, going down to the city, obtaining a *warrant*, come (sic) back and examine your Customs importation records." (N.T. 1–29). (Emphasis added)

*United States v. Molt*, 444 F.Supp. 491, 493 (E.D.Pa.1978). When the attorney finally called, the agent, citing the statutes previously shown to Molt, told the attorney that if requested to leave he would do so but that he would simply get a warrant to examine the records. The agent added that he was authorized to conduct an examination even without a warrant. Molt then told his attorney he had nothing to hide, so the attorney told him he might as well let the agents examine the records.

That interchange formed the basis for Molt's "consent" to the search that produced the documentary and physical evidence which was the subject of Molt's motion to suppress. Following a three-day hearing and briefing of the issues, the district court concluded that the agents' innocent misrepresentation of their statutory authority to inspect Molt's records rendered his alleged consent invalid, requiring suppression of all evidence stemming from the tainted inspection. *United States v. Molt, supra,* at 499.

## II.

The government challenges both factual findings and legal conclusions of the district court. We will address the government's arguments as follows: first, that the court erred in its interpretation of the Tariff Act; second, that the court made erroneous findings of fact and applied an incorrect legal precept in holding that appellee's consent was invalid; and finally, that seizure of appellee's records was proper under principles of law not considered by the district court.

## A.

At the outset it is important to emphasize that a very narrow issue is before this court. We are to decide only whether Molt's consent to the search was invalidated by the agents' innocent misrepresentation of their authority under §§ 1509–11 to search his premises. We do not meet the question of the agents' authority to obtain a search warrant from a judicial officer under any other statutory authority. As conceded by the government, "The Customs Agents were not, of course, executing a search war-

States Customs Court, shall be final and conclusive against such person; and any person who shall willfully and corruptly swear falsely on an examination before any judge of the United States Customs Court, or appropriate customs officer, shall be deemed guilty of perjury; and if he is the owner, importer, or consignee, the merchandise shall be forfeited or the value thereof may be recovered from him.

§ 1511. *Inspection of importer's books*

If any person importing merchandise into the United States or dealing in imported merchandise fails, at the request of the Secretary of the Treasury, or an appropriate customs officer, or the United States Customs Court, or a judge of such court, as the case may be, to permit a duly accredited officer of the United States to inspect his books, papers, records, accounts, documents, or correspondence, pertaining to the value or classification of such merchandise, then while such failure continues the Secretary of the Treasury, under regulations prescribed by him, (1) shall prohibit the importation of merchandise into the United States by or for the account of such person, and (2) shall instruct customs officers to withhold delivery of merchandise imported by or for the account of such person. If such failure continues for a period of one year from the date of such instructions the appropriate customs officer shall cause the merchandise, unless previously exported, to be sold at public auction as in the case of forfeited merchandise.

rant pursuant to Section 1595 [2] on January 14, 1975, in that they were not executing a search warrant at all." Brief of appellant at 24. The factual complex described by the government corroborates this statement:

> Molt then asked Agent O'Kane by what authority could U. S. Customs agents inspect importation records (App., pp. 55A, 56A). O'Kane opened his briefcase and withdrew, per his normal procedure whenever the question was asked by an importer, a photostatic copy of 19 U.S.C. §§ 1509, 1510, and 1511. (App., pp. 223A, 445A).

*Id.* at x. Thus, because the government's theory before this court explicitly removes from proper consideration by us any ramifications of a search conducted under 19 U.S.C. § 1595, we are left with a tightly framed proposition: did the agents' representation that they had the right to examine importation documents on the premises on the basis of 19 U.S.C. §§ 1509–11 vitiate the consent for the search given by Molt? [3]

The district court held that 19 U.S.C. §§ 1509–11 do not give customs agents the right to examine records at the importer's place of business. Section 1509 provides that an importer may be cited to appear before customs officers to give testimony, and to produce records regarding merchandise imported within the preceding year. Section 1510 provides for a penalty of $20 to $500 for failure to comply with a citation to appear, testify, or produce records. We think the court was correct in stating that "the only section on which the government can rely at all is 1511 since Molt was not cited to appear before customs officers to give testimony or produce documents." 444 F.Supp. at 495.

■ Yet § 1511 provides only that the importer who fails to permit inspection of his records shall be prohibited from importing more merchandise. Stated differently, customs agents acting under § 1511 have no right or authority to inspect records without a citation or warrant; they may simply *request* the opportunity to do so. If the request is denied, the government's only remedy is to prohibit further importation. There is no statutory means of compelling disclosures of the records under §§ 1509–11. The district court stated:

> Although customs agents can ask to see records, if they represent that they have the unqualified right to make an inspection, they are wrong. . . . Therefore, I hold that the agents acted beyond their authority in telling defendant and his attorney that they had a right to inspect Molt's records on his premises.

*Id.* We think this interpretation of the statute is correct.

### B.

■ The government argues that the district court erred in declaring Molt's consent invalid both because of erroneous factual findings and because of the incorrect application of legal precepts.

---

**2.** 19 U.S.C. § 1595 provides:

> (a) If any collector of customs or other officer or person authorized to make searches and seizures shall have cause to suspect the presence in any dwelling house, store, or other building or place of any merchandise upon which the duties have not been paid, or which has been otherwise brought into the United States contrary to law, he may make application, under oath, to any justice of the peace, to any municipal, county, State, or Federal judge, or to any United States commissioner, and shall thereupon be entitled to a warrant to enter such dwelling house in the daytime only, or such store or other place at night or by day, and to search for and seize such merchandise: *Provided,* That if any such house, store, or other building, or place in which such merchandise shall be found, is upon or within ten feet of the boundary line between the United States and a foreign country, such portion thereof as is within the United States may forthwith be taken down or removed.
>
> (b) Any person authorized by this chapter to make searches and seizures, or any person assisting him or acting under his directions, may, if deemed necessary by him or them, enter into or upon or pass through the lands, inclosures, and buildings, other than the dwelling house, of any person whomsoever, in the discharge of his official duties.

**3.** Thus we expressly do not meet the question of the agents' ability to obtain a warrant to search Molt's premises under 19 U.S.C. § 1595.

The arguably erroneous findings of fact relate to the representation of the customs agents that they had a right to conduct an examination of Molt's records at his business establishment. The lengthy transcript of the suppression hearing contains conflicting testimony as to whether the agents claimed a "right" or "authority" to inspect, or whether they threatened to obtain a "citation" or a "warrant." The government, relying on Molt's misstatements of fact to the agents, e. g., that his records were at home and that he had not imported wildlife for over two years, suggests that the court should not have credited Molt's testimony at the hearing but should have believed the testimony of the government witnesses instead.

Our standard of review for factual findings is the clearly erroneous test, defined in *Krasnov v. Dinan*, 465 F.2d 1298, 1302 (1972):

It is the responsibility of an appellate court to accept the ultimate factual determination of the fact-finder unless that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data.

We have examined the record and sympathize with the government's observation that there is conflicting evidence bearing on the challenged facts. Nevertheless, the record support for the district court's findings is a veritable rainbow compared to the pallid void which could justify appellate substitution of the government's version of the facts. Molt's testimony is corroborated by his attorney, transcript of hearing at 1–159 to 1–160, and the testimony of the customs agents themselves supports the district court's finding that they told Molt they could obtain a warrant, *id.* at 1–29, and generally conveyed a false impression of authority to search, *id.* at 1–29, 1–160. There is no doubt that this evidence has sufficient credible coloration to support the findings.

■ The government also argues, as it must, that even assuming misrepresentation of the scope of their authority by the customs agents, Molt's consent was voluntary under Fourth Amendment standards established by the Supreme Court. The thrust of this argument is that the district court ignored the teaching of *Schneckloth v. Bustamonte*, 412 U.S. 218, 249, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), that the government may establish voluntariness of consent without proving that a defendant knew he need not consent to a warrantless search, and that the court failed to take into account all the circumstances as required by this court in *United States ex rel. Harris v. Hendricks*, 423 F.2d 1096 (3d Cir. 1970). The government urges that Molt's college education, his business experience, and his consultation with his attorney prior to consenting combine to create an atmosphere of voluntariness.

We note, first, that the district court explicitly referred to *Schneckloth's* holding that "the government need not establish [knowledge of the right to refuse consent] as the *sine qua non* of an effective consent," 444 F.Supp. at 496. The court also referred to the factors expressed in *Hendricks, supra*, which should be assessed in determining voluntariness of consent. *Id.* We cannot conclude, therefore, that the court applied an erroneous legal standard. Consequently, the government's argument is that the court incorrectly applied the precept to the facts of this case.

■ We will not reverse the district court's conclusion for two reasons. First, although *Schneckloth* does not require proof that a defendant knows he has a right to refuse consent, such knowledge is one factor to be considered in assessing voluntariness. 412 U.S. at 249, 93 S.Ct. at 2041. An important consideration underlying the *Schneckloth* rule is "the difficulty of the prosecution's burden" if it had to prove "the nature of a person's subjective understanding." 412 U.S. at 230, 93 S.Ct. at 2049. When evidence exists to show the opposite—that a defendant believed he must consent—such evidence weighs heavily against a finding that consent was voluntarily given. And when that belief stems

directly from misrepresentations by government agents, however innocently made, we deem the consent even more questionable. Second, we are unwilling to accord the importance suggested by the government to the factor of Molt's communication with his attorney prior to acquiescing in the search. Certainly Molt's representation to the attorney that he had nothing to hide, the attorney's opportunity to read the statute, and the attorney's advice to Molt that he permit the inspection weigh in favor of the government's position. Nevertheless, "[v]oluntariness is a question of fact to be determined from all the circumstances . . . ." *Schneckloth*, 412 U.S. at 248–49, 93 S.Ct. at 2059. To overturn the district court's finding that Molt's consent was not voluntary would be tantamount to holding that, as a matter of law, consent based on an attorney's advice must be voluntary. We return to the rule of *Krasnov, supra,* and based on the conflicting credible evidence, we will not disturb the district court's finding.

## C.

The district court concluded that the seizure of Molt's records was improper even if he had consented to the search. The government argues that the court "completely misconstrue[d]" the regulations on which it based its opinion, citing different statutory authority for the seizure of records by customs agents. We need not address the propriety of the seizure nor the interplay of the statutes and regulations inasmuch as we have held that Molt's consent was invalid. The government does not attempt to justify the seizure under search warrant powers authorized by 19 U.S.C. § 1595, brief of appellant at 24, or under the

plain view doctrine, *id.* at 26, so the seizure stemming from the illegal search cannot be justified.

■ Similarly, we need not discuss the validity of a second search conducted on January 22, 1975 on the authority of a warrant based on information obtained in the first search. The government concedes that if the original search and seizure was illegal, then the seizure of additional records pursuant to the subsequently issued warrant was also illegal. *Id.* at 28. Having found the original search to be illegal, the evidence seized pursuant to the warrant must also be suppressed as fruit of the poisonous tree.[4]

Accordingly, the suppression order will be affirmed.

STERN, District Judge * (dissenting).

I agree with the majority that the district court's factual findings should not be disturbed. However, I disagree with the majority's interpretation of the Tariff Act of 1930 and its conclusion that Molt's consent to search was involuntary as a matter of law. I, therefore, dissent.

The majority holds, as did the district court below, that Agent O'Kane misrepresented his authority when he told Molt that he could obtain a warrant if Molt did not consent to the search. According to the majority, this statement was coercive because the agents had no such right.

Title 19, United States Code, § 1511 (1970) provides that:

> If any person importing merchandise into the United States or dealing in imported merchandise fails, at the request

---

**4.** The dissent injects an issue neither briefed nor argued in this court, to-wit, the exception to the search warrant requirement in industries which are "closely regulated." Dissenting Opinion at 1254. We will not notice this argument for several reasons. First, the government has removed the general customs search warrant authority issue from this appeal, thus making irrelevant general case law dealing with search warrants and exceptions thereto. Second, the government itself does not rely on the argument injected *sua sponte* by the dis-

sent. Third, the government has not requested a remand for additional testimony and ostensibly prefers to rely on the testimony adduced at the three-day hearing. Thus when the dissent states "yet, neither the district court nor the majority considers this possibility," dissenting opinion at 1255, we are constrained to observe that no litigant in this appeal, including the government, considered this possibility.

\* Herbert J. Stern, United States District Judge, District of New Jersey, sitting by designation.

of the Secretary of the Treasury, or an appropriate customs officer, or the United States Customs Court, or a judge of such court, as the case may be, to permit a duly accredited officer of the United States to inspect his books, papers, records, accounts, documents, or correspondence, pertaining to the value or classification of such merchandise, then while such failure continues the Secretary of the Treasury, under regulations prescribed by him, (1) shall prohibit the importation of merchandise into the United States by or for the account of such person, and (2) shall instruct customs officers to withhold delivery of merchandise imported by or for the account of such person. If such failure continues for a period of one year from the date of such instructions the appropriate customs officer shall cause the merchandise, unless previously exported, to be sold at public auction as in the case of forfeited merchandise.

Although no court, other than the court below, has ever construed this statute, the majority simply concludes:

> [C]ustoms agents acting under § 1511 have no right or authority to inspect records without a citation or warrant; they may simply *request* the opportunity to do so. If the request is denied, the government's only remedy is to prohibit further importation. There is no statutory

means of compelling disclosure of the records under §§ 1509–11.

*Ante,* at 1250.[1] Here, as well as in at least three other places in its opinion, the majority endorses and announces as the law of this Circuit the district court's holding that customs agents may not seek an administrative search warrant pursuant to §§ 1509–11.[2] This holding is critical to the majority's conclusion that the agent's "threat" to obtain a warrant was a misrepresentation of his authority and invalidated Molt's consent. Yet, this conclusion is reached without discussion of an entire line of Supreme Court decisions authorizing administrative warrants in similar contexts, and another line of Supreme Court decisions holding that in certain closely regulated industries such warrants may not even be required.

It is true, as the majority points out, that *counsel* did not address these cases. *Ante,* at 1252, fn. 4. However, to state that the dissent has "injected" them into the case is to imply that this Court is bound by counsel's view of the law. Unlike a concession of fact, a concession of law or the failure of counsel to cite authorities does not bind judges. Regardless of counsel's actions, this Court is obligated to address applicable precedents.[3] The law we make reflects the reasoned decision of this Court and not merely the level of advocacy before it.

1. Under a Hohfeldian analysis of rights, duties and privileges, if the importer has a duty to show his records, an agent has a "right" to see them.

2. The majority correctly notes that § 1595 is not before us. Neither was it before the district court. Section 1595 has nothing to do with warrants for records.

3. *See, e. g., Walker Mfg. Co. v. Dickerson, Inc., et al.,* 560 F.2d 1184 (4th Cir. 1977), in which the Fourth Circuit stated:

> Ordinarily, of course, we do not pass on questions that were not presented to or considered by the district court, but orderly rules of procedure do not require sacrifice of the rules of fundamental justice. "Indeed, if deemed necessary to reach the correct result, an appellate court may *sua sponte* consider points not presented to the district court and not even raised on appeal by any party." . .
> [A]nd it has been said that an exception to

the general rule of non-reviewability exists where a pertinent statute has been overlooked in the trial court.

*Id.,* at 1187, n.2. (Citations omitted). *See also,* this Court's statements in *United States v. Moore,* 444 F.2d 475, 476 (3rd Cir., 1971):

> The dissenting opinion also suggests that since the District Court applied the law of the state of the Moore family domicile at the time of the accident and since neither party challenged in this court the District Court's application of this rule, we should accept this as the binding law of the case. Thus, the dissent implies that, in reaching our decision as to the applicable law, we should blindly apply a rule of law enunciated by the District Court even if this rule is incorrect. This is, indeed, a novel proposition. The function of our court is to decide cases by applying "correct" rules of law to *facts* determined by the District Court.

Since as early as 1886 until as recently as this past term, the Supreme Court has attempted to delineate the circumstances under which a warrant may be required for an administrative search, and, where a warrant is required, the standards for obtaining one. The majority's conclusion that the customs agents not only had no right to inspect Molt's records, but that they could not even obtain a warrant is, I submit, untenable in light of these decisions. In any event, and with all due respect, I do not understand the majority's failure to even discuss these cases.

The "governing principle" in the area of administrative searches, see *Frey v. Panza*, 583 F.2d 113 (3rd Cir. 1978), was set forth in *Camara v. Municipal Court*, 387 U.S. 523, 528–29, 87 S.Ct. 1727, 1731, 18 L.Ed.2d 730 (1967) in which the Supreme Court stated that:

> [E]xcept in certain carefully defined classes of cases, a search of private property without proper consent is "unreasonable" unless it has been authorized by a valid search warrant.

Specifically, the Court there held that the Fourth Amendment prohibits the warrantless search of a personal residence to determine compliance with housing codes. This holding was extended in *See v. City of Seattle*, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967) to prohibit warrantless searches of private commercial premises. In both cases, there were municipal ordinances which, like the statute here, gave officials broad powers to inspect and provided penalties for failure to permit inspection. Neither of those ordinances provided for a warrant. Nevertheless, the Court not only read into those ordinances the right to obtain a warrant to search, it further indicated that the standard for obtaining such a warrant is not the "probable cause" required for criminal searches. The standard is merely whether there is "a valid public interest [which] justifies the intrusion . . . ." *Camara, supra*, 387 U.S. at 539, 87 S.Ct. at 1736, in the case of commercial premises, the standard is a flexible one "of reasonableness that takes into account the public need for effective enforcement of the particular regulation involved . . . ." *See v. City of Seattle, supra*, 387 U.S. at 545, 87 S.Ct. at 1740. This flexible standard has been reiterated by the Court as recently as in this past term. See *Michigan v. Tyler*, 436 U.S. 499, 98 S.Ct. 1942, 1948, 56 L.Ed.2d 486 (1978); *Marshall v. Barlows*, 436 U.S. 307, 98 S.Ct. 1816, 1824–25, 56 L.Ed.2d 305 (1978).

These decisions cast grave doubt upon the majority's conclusion that the agents could not have obtained a warrant to search Molt's records. If the majority rests its conclusion on the ground that the inspection procedures as set forth at 19 U.S.C. §§ 1509–11 are exclusive and do not permit the issuance of a warrant, such a conclusion would be inconsistent with the Supreme Court's decisions in *Camara* and *See*. If the majority rests its conclusion on lack of probable cause, then, I submit, such a conclusion should have been framed in terms of the flexible requirements for a warrant set forth by the Supreme Court.

Apart from the question whether the agent misrepresented his authority to obtain a warrant, I question further whether a warrant was even necessary in light of *United States v. Biswell*, 406 U.S. 311, 316, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972) and *Colonnade Catering Corp. v. United States*, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970). Those cases recognize an exception to the warrant requirement in industries which are so "closely regulated" that an entrepreneur who embarks on such an enterprise "has voluntarily chosen to subject himself to a full arsenal of governmental regulation" and, therefore, has no reasonable expectation of privacy. *Marshall v. Barlows, supra*, 98 S.Ct. at 1821.

Industries such as these fall within the "certain carefully defined classes of cases," referenced in *Camara, supra*, 387 U.S., at 528, 87 S.Ct. [1727] at 1731. . . The element that distinguishes these enterprises from ordinary businesses is a long tradition of close government supervision, of which any person who chooses to enter such a business must already be

aware. "A central difference between those cases [*Colonnade* and *Biswell*] and this one is that businessmen engaged in such federally licensed and regulated enterprises accept the burdens as well as the benefits of their trade, whereas the petitioner here was not engaged in any regulated or licensed business. The businessman in a regulated industry in effect consents to the restrictions placed upon him." *Almeida-Sanchez v. United States*, 413 U.S. 266, 271 (93 S.Ct. 2535, 2538, 37 L.Ed.2d 596) . . . (1973).

*Id.* Here, the long history of government regulation over customs and importation which, as detailed in *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), predates the Constitution itself, suggests that the search here might well fall within the *Colonnade-Biswell* exception to the warrant requirement. Yet, neither the district court nor the majority considers this possibility.

At the very least, then, as a matter of law, the rights of the agents were far from clear. A constitutional scholar, even a customs agent, might not be able to fully comprehend the decisions of the Supreme Court in the area of administrative searches. Indeed, the district judge found as a fact that the agents acted in good faith, that is, that "they did not deliberately misstate their authority to Molt." 444 F.Supp. at 498. The majority accepts this finding and I agree. I am constrained to add, however, that any other finding would have been highly inappropriate given the state of the law and the dearth of judicial interpretation of § 1511.

Finally, I disagree most strenuously with the finding of the district court, affirmed by the majority, that, although the agents acted in good faith, their misrepresentations

> so pervaded the atmosphere at the Exchange as to make Molt believe he had no choice but to submit to the agents' search. . . . This was not knowing and voluntary consent, but a *surrender* to

a totally inappropriate assertion of authority.

444 F.Supp. at 496. (Emphasis supplied).

It is well-settled that a warrantless search is reasonable under the Constitution if consent is given freely and voluntarily. *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *United States ex rel. Harris v. Hendricks*, 423 F.2d 1096 (3rd Cir. 1970). "[W]hether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Schneckloth, supra*, 412 U.S. at 227, 93 S.Ct. at 2047. "[I]t is only by analyzing all the circumstances of an individual consent that it can be ascertained whether in fact it was voluntary or coerced." *Id.*, at 233, 93 S.Ct., at 2050.

The totality of the circumstances here, based on the facts found below, compels the conclusion that the consent was voluntary as a matter of law. Defendant Molt is a college-educated businessman who frequently travels overseas. On June 14, 1975, two United States Customs Agents and a local detective went to Molt's place of business, the Philadelphia Reptile Exchange, to examine his importation records. Molt questioned the agents' authority to inspect his records and the agents responded by showing him a copy of 19 U.S.C. §§ 1509, 1510 and 1511. Molt read the statutes and indicated that he had no objection to an inspection, but that he found it hard to believe that the agents could search his records without a warrant and that he wished to consult his attorney. While waiting for his attorney to return his call, Molt asked the agents what would happen if he didn't consent. The response was:

> "Let me make it clear to you. Number one, you are not under arrest. Number two, you are not being detained. You are not under any rule or order to show us your records and you could tell us to get

out of your store and we'll have to go." And I said, "But if I do leave," I said, "It will be for the purpose of getting into my car, going down to the city, obtaining a *warrant*, come (sic) back and examine your Customs importation records." (N.T. 1–20).

When Molt's attorney finally called, the agent spoke to him; cited the same statutes he had shown to Molt; told him that as far as he knew Molt had committed no offense, and that he would leave if so requested, but that he would then obtain a warrant. The agent added that, while he was authorized to conduct an examination even without a warrant, "I can leave somebody here to keep this place under surveillance, go back and get the paperwork and come here and do what I have to do." (N.T. 1–160), *Id.* Molt then got on the phone and told his attorney that he had nothing to hide, and his attorney advised him that he might as well let the agents examine the records. Upon this advice, Molt consented to the search.

Based on these facts, I simply cannot agree with the district court and the majority that the agents' "misrepresentations" so pervaded the atmosphere as to vitiate Molt's ability to voluntarily consent to the search. Exactly what was this pervasive "misrepresentation?" According to the district court, it was the agents' "threat" to obtain a warrant, made in the good faith belief that they had the right to obtain one. I do not understand how this can be construed as a *threat.* An agent's statement that he intends to get a warrant does no more than inform the citizen that the agent will endeavor to obtain whatever judicial process he is entitled to. It is a "threat" only to the extent that it "threatens" the citizen that the agent will go to court, appear before a neutral magistrate, swear under oath that he believes the citizen may have violated the law, and await the magistrate's decision whether a warrant will issue. Such a "threat" can never be coercive, if all that is "threatened" is that the agent will repair to a courthouse to obtain legal process. If anything, it is a representation by the agent that, *at that time*, he has no

authority to search, and thus must make application to the appropriate legal authority.

Other courts, in post-*Schneckloth* opinions mentioned neither by the district court nor by the majority, have held such statements insufficient to invalidate an otherwise voluntary consent to a search. *See, e. g., United States v. Tortorello*, 533 F.2d 809 (2nd Cir.), *cert. denied*, 429 U.S. 894, 97 S.Ct. 254, 50 L.Ed.2d 177 (1976); *United States v. Faruolo*, 506 F.2d 490 (2nd Cir. 1974); *United States v. Gavic*, 520 F.2d 1346 (8th Cir. 1975); *United States v. Agosto*, 502 F.2d 612 (9th Cir. 1974). Although, obviously, these cases do not bind this Court, these circuits have thus rejected the rule today announced by this Court. Henceforth, as I read the majority opinion, when an agent says "I will get a warrant" and then obtains consent, the search must be invalidated if the agent could not have gotten the warrant, even if he had a good faith basis for that belief.

Moreover, even apart from the agent's statement, I am at a loss to see exactly what evidence there was that Molt's will was overborne. Before the agent "threatened" Molt, he warned him that he had the right to refuse to consent, a warning which is not even required under *Schneckloth*. Having been exposed to this "threat", Molt then consulted his lawyer, telling him he had nothing to hide. Molt's attorney, having been cited the statutes under which the agents claimed authority to search, advised him to consent. Under these circumstances, it is difficult to see exactly whose will was overborne here. Was it Molt's? His lawyer's? If it was Molt's will that was overborne, exactly who overbore it? The agents by their statements to Molt? Molt's lawyer whose advice was based on Molt's misrepresentations to him?

The majority states that "[t]o overturn the district court's finding would be tantamount to holding that, as a matter of law, consent based on an attorney's advice must be voluntary." *Ante*, at 1252. I do not see why that result should offend, or, absent

unusual circumstances involving governmental bad faith not here involved, how any other result is tenable under *Schneckloth v. Bustamonte*, and the recent Supreme Court decision in *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). Molt's consent here was, in my view, voluntary as a matter of law.

In *Schneckloth* a finding of voluntary consent was affirmed on facts far more compelling than these. The defendant in that case was a relatively uneducated man who, while driving with friends, was stopped by police at 2:40 in the morning. The police ordered the occupants out of the car and, without informing them of their right to refuse consent, asked if they could search the automobile. Here, by contrast, the defendant is a well-educated man, obviously familiar enough with the law to express an opinion on the agents' right to search without a warrant and to realize that he could and should consult an attorney. Molt dealt with the agents on his own territory in the late afternoon under circumstances where it was clear he was not under arrest. He was given a full warning of his right to refuse consent.

In *Watson* the Supreme Court reversed a finding of involuntary consent. In that case, the defendant consented to a search of his car *after* the police had placed him under arrest and searched his person, and without receiving a warning that he had the right to refuse consent. The Supreme Court noted that,

> There was no overt act or threat of force against Watson proved or claimed. There were no promises made to him and no indication of more subtle forms of coercion that might flaw his judgment. . . . Similarly, under *Schneckloth*, the absence of proof that Watson knew he could withhold his consent, though it may be a factor in the overall judgment, is not to be given controlling significance. There is no indication in this record that Watson was a newcomer to the law, mentally deficient, or unable in the face of a custodial arrest to exercise free choice.

423 U.S. at 424–25, 96 S.Ct. at 828. (footnote omitted). Unlike Watson, Molt was not under arrest. Unlike Watson, Molt was informed that he need not consent. Unlike Watson, who was without counsel, Molt consulted his lawyer who then spoke with the agents and advised consent. Under these circumstances the majority here holds that Molt's will and, presumably his lawyer's as well, was overborne because the agents threatened to seek a warrant if Molt did not consent to a search.

Absent a finding that the agents, acting in bad faith, affirmatively lied to either Molt or to his attorney, the finding of involuntariness is totally inconsistent with *Schneckloth* and *Watson*. Molt sought and obtained legal advice from counsel of his own choosing; yet, the majority would make the *lay agents* the guarantors of the soundness of this legal advice—and that assuming the advice was wrong. In fact, the advice was predicated upon Molt's deception of his own lawyer when he told him he had nothing to conceal. In any event, Molt's mendacity aside, in my view, the agents had every right to obtain the warrant which they "threatened" to seek.

The only remaining questions concern the propriety of the seizure of Molt's records and the January 22, 1975 search pursuant to a warrant based on information obtained in the first search and seizure. The district court's invalidation of both the seizure and the subsequent search was based upon its finding that Molt did not freely consent to the initial search. The district judge does state, in his opinion, that even if Molt's consent had been voluntary, the seizure was unlawful. 444 F.Supp. at 497. However, the judge apparently did not consider whether either the "plain view" or "exigent circumstances" doctrines might justify the seizure if the search were voluntary. Thus, I would reverse on the issue of the validity of Molt's consent and remand for further findings on the legality of the seizure and the second search.