**UNITED STATES of America**

v.

**Henry A. MOLT, Jr.**

**Crim. No. CR. 77–339.**

United States District Court, E. D. Pennsylvania.

July 25, 1979.

---

Thomas Mellon, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Gilbert Abramson, Philadelphia, Pa., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

NEWCOMER, District Judge.

Defendant, Henry A. Molt, Jr. has moved to suppress the testimony of Rudolf Komarek claiming that it is the fruit of an illegal search and seizure. After conducting an evidentiary hearing and considering the questions presented, the Court denied the motion prior to trial and files the following findings of fact and conclusions of law in support thereof.

*FINDINGS OF FACT*

1. Having received information from a customs agent in New York, which indicated that defendant Henry A. Molt may have committed violations of the customs and wildlife laws, United States Customs Agents Joseph M. O'Kane and John Friedrich, on January 14, 1975, went to defendant Molt's place of business, the Philadelphia Reptile Exchange, to investigate further. There they searched and seized some of defendant's business records. Since they did not complete the search on January 14, O'Kane obtained a search warrant for Molt's business premises and returned to the Phildelphia Reptile Exchange on January 22, 1975, at which time he seized other records belonging to defendant Molt.

2. As a result of these searches and seizures, O'Kane and Friedrich obtained evidence which incriminated both defendant Molt and Rudolf Komarek. This evidence included tape recordings of telephone conversations between the two men concerning the importation of radiated tortoises.

3. Rudolf Komarek was called before the grand jury in the summer of 1975. Although he produced several documents for the grand jury, he steadfastly maintained his innocence, denied any knowledge as to importation of radiated tortoises and would not comment on the sale of them. He did not cooperate with the government.

4. On August 4, 1977, the grand jury returned an indictment charging Henry A. Molt, Rudolf Komarek and Walter Zinniker with conspiracy to violate customs and wildlife laws, by, *inter alia,* conspiring to import and sell radiated tortoises, an endangered species.

5. Defendant Molt challenged the legality of the January, 1975, search and seizure of his records. After conducting an evidentiary hearing, Judge J. William Ditter, Jr. in a related case and for the purposes of this case, found that the January 14, 1975 search and seizure was illegal and that the evidence obtained as a direct result of that search and seizure, as well as any fruits thereof, including the evidence obtained pursuant to the January 22, 1975 search warrant, were required to be suppressed. *United States v. Molt,* 444 F.Supp. 491 (E.D. Pa.), *aff'd,* 589 F.2d 1247 (3d Cir. 1978). Judge Ditter's decision applied to this case by stipulation of the parties.

6. While this case was proceeding against defendant Molt, Rudolf Komarek remained a fugitive until November, 1978, when he was arrested on an unrelated charge out of state. He was returned to Philadelphia at which time counsel was appointed to represent him.

7. Although the evidence obtained in January, 1975, from Molt's place of business could not be used in the trial against him, the government was free to introduce that evidence in its case against Komarek. Through a discovery conference, his counsel was made aware of the evidence that the government had against Komarek, including the incriminating tapes. She discussed the government's evidence with Komarek and played certain portions of the tapes for him. After he listened to the ones about radiated tortoises, he told his counsel to "forget it", for he recognized the damaging evidence that the government had secured. This was not the only government evidence which his counsel discussed with him. She also told him that there were certain witnesses that would be testifying against him and that other physical evidence of an incriminating nature existed.

8. The government offered Komarek several options, one of which was to plead guilty, cooperate with the government, testify against Molt, and in return have the

government recommend a reduction of sentence. Komarek decided to accept this offer, as he was convinced that the government had sufficient evidence with which to convict him and that the plea arrangement would allow him to receive a lighter sentence than one resulting from imposition by the Court without a plea bargain.

9. Komarek believed that although there was other evidence, the most incriminating evidence that the government possessed was the tape recordings of his conversations with Molt that had been illegally seized from Molt's place of business. And this evidence was the "main" reason for his belief that the government would be able to establish his guilt.

10. When Komarek accepted the government's offer and changed his plea to guilty, he did so voluntarily, believing that he was acting in his own best interest.

11. Since changing his plea, Komarek has cooperated fully with the government and is willing to testify in this case against defendant Molt.

12. In eliciting information from Komarek and preparing him to testify in this trial, the government has not shown him the illegally seized evidence or played the illegally obtained tapes for him.

13. As this Court has already found in its May 30, 1979, decision, the government discovered Komarek as a potential witness and co-conspirator by means unrelated to the illegal search and seizure.

*CONCLUSIONS OF LAW*

Any taint that may have resulted from Komarek's contact with the illegally obtained tapes has been dissipated by his decision to voluntarily testify in this case. In *United States v. Ceccolini,* 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978), the Supreme Court recognized that greater costs are incurred when a live witness is excluded from testifying because of the exclusionary rule than when physical evidence is suppressed. The Court instructed that to exclude testimony of a witness, the defendant would have to prove that a more direct link existed between the illegal evidence and the testimony than would have to be shown to suppress physical evidence. Here defendant has not made that showing. Komarek's decision to accept a plea bargain and testify against Molt was freely made, without coercion, and it breaks any link that may have existed between his testimony and the illegally obtained tapes. Therefore, the motion to suppress must be denied.