**UNITED STATES of America**

v.

**Stefan A. BRODIE, Donald B. Brodie, James E. Sabzali, Bro–Tech Corp. d/b/a "The Purolite Company"**

No. 00–CR–629.

United States District Court, E.D. Pennsylvania.

Feb. 15, 2002.

Joseph G. Poluka, U.S. Attorney's Office, Philadelphia, PA, for Plaintiff.

Gregory B. Craig, Williams and Connolly, Washington, DC, Arlin M. Adams, Schnader Harrison Segal & Lewis, Philadelphia, PA, Steven Kimelman, Scott Peeler, Williams Connelly Arent Fox, New York City, Robert E. Welsh, Jr., Catherine M. Recker, Welsh & Recker, Philadelphia, PA, Gregory P. Miller, Kevin Raphael, Miller, Alfano & Raspanti, P.C., Edward S. G. Dennis, Jr., Morgan, Lewis & Bockius, Philadelphia, PA, for Defendants.

## ORDER AND MEMORANDUM

MCLAUGHLIN, District Judge.

AND NOW, this 15th day of February, 2002, upon consideration of Defendants' Motion to Suppress All Materials Seized from James Mitchell (Docket No. 207), the government's opposition thereto, the testimony and documents introduced into evidence at the hearing held on September 21, 2001, and additional legal memoranda submitted by the parties at the request of

the Court, it is hereby ORDERED and DECREED that said motion is GRANTED as to Bro–Tech. It is DENIED as to the other defendants. IT IS FURTHER ORDERED that on or before February 24, 2002, the government shall either return the data tapes and catalog to Bro–Tech or file a paper with the Court, explaining why return of the tapes and catalog is not the proper remedy.

Bro–Tech has moved to suppress certain data tapes and a catalog listing data files taken by the government from James Mitchell, a former employee of Bro–Tech, on the ground that the tapes were taken in violation of Bro–Tech's Fourth Amendment rights. The Court held an evidentiary hearing on September 21, 2001 with respect to an earlier motion by the defendants, alleging governmental misconduct. After that hearing, Bro–Tech moved to suppress the materials, relying on the evidence taken at the hearing and an affidavit of James Mitchell attached to its motion to suppress.

■ A threshold question is whether Bro–Tech may raise a Fourth Amendment claim in view of the fact that the materials were taken not from Bro–Tech, but from Mr. Mitchell. The government argues that it may not, citing *Rakas v. Illinois*, 439 U.S. 128, 134, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), which held that a defendant cannot complain about a violation of a third party's Fourth Amendment rights. Bro–Tech argues that its Fourth Amendment rights are implicated here because the materials belonged to it. Mr. Mitchell said so in his affidavit and Special Agent McCrossan testified to the same effect. Hearing Transcript at 140–41; Mitchell Affidavit, Memorandum in Support of Defendants' Motion to Suppress, at Attachment A, at ¶ 2 ("Mitchell Aff."). The government has not presented any evidence to the contrary. The Court, therefore, finds that the materials did belong to Bro–Tech. Because the company owned the data tapes and catalog, its property rights are implicated. The question is whether property rights are protected by the Fourth Amendment when there has been no invasion of any privacy interests of the defendant.

■ The Supreme Court has made clear that the Fourth Amendment protects both privacy interests and property rights. *See Soldal v. Cook County*, 506 U.S. 56, 62, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992) (citing cases); *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). In *Jacobsen*, the Court explained the distinction:

> [The Fourth Amendment] protects two types of expectations, one involving "searches," the other "seizures." A "search" occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. A "seizure" of property occurs when there is some meaningful interference with an individual's possessory interests in that property.

*Id.* (citations omitted). The Supreme Court elaborated on this principle in *Soldal*, 113 S.Ct. at 544–548. This Court concludes that Bro–Tech may challenge under the Fourth Amendment the government's taking of the tapes from Mr. Mitchell.

In addition, Bro–Tech has a privacy interest in the content of the data tapes. *See Horton v. California*, 496 U.S. 128, 141 n. 11, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). There has been no evidence presented or argument made that the other defendants had either a property or a privacy interest in the materials, so the motion is denied as to them.

■ The government argues that there has been no seizure here within the

meaning of the Fourth Amendment. But there clearly was. The Supreme Court has stated that seizure of property occurs where " 'there is some meaningful interference with an individual's possessory interests in that property.' " *Soldal*, 506 U.S. at 61, 113 S.Ct. 538 (quoting *Jacobsen*, 466 U.S. at 113, 104 S.Ct. 1652). The government agent took the materials and did not return them. There was a seizure. There was also a search if the government reviewed the contents of the data tapes.

█ Having found that the Fourth Amendment protects Bro–Tech's possessory and privacy interests in the materials, the government must justify its seizure of the materials. There was no warrant. The government argues that Mr. Mitchell consented to the seizure. But the materials did not belong to Mr. Mitchell. Even if he would have been able to consent to their seizure when he was an employee of Bro–Tech, a question on which the Court expresses no view, he was a former employee at the time of his alleged consent. The government has neither argued nor presented any case law in support of the proposition that a former employee can consent to seizure of his former employer's property.

█ Nor does it appear that Bro–Tech "abandoned" the materials for purposes of the Fourth Amendment. Agent McCrossan testified at the hearing that the tapes likely belonged to Bro–Tech, and Mr. Mitchell stated in a sworn affidavit that the materials were Bro–Tech's property. *See* Hearing Transcript at 141; Mitchell Aff. at ¶ 2. Mr. Mitchell initially had the data tapes and catalog at his home as part of his employment with Bro–Tech in case there was a system failure or loss of data on the company server. Defendants' Hearing Exhibit 31, at 2. Agent McCrossan took possession of them only nineteen days after Mr. Mitchell's resignation; the

Court finds that Bro–Tech did not have the time or reason to discover that these data tapes were missing. The government did not provide any evidence to the contrary.

█ Finally, even if Mr. Mitchell could consent, the Court holds that his consent was not valid. Consent must be voluntary, and evidence of a person's belief that he must give consent weighs heavily against a finding that his consent was voluntarily given. *See United States v. Molt*, 589 F.2d 1247, 1251–52 (3d Cir.1978); *see also United States v. Sebetich*, 776 F.2d 412, 424–25 (3d Cir.1985). The Court of Appeals has held this to be especially true when the belief stems from a misrepresentation made by a government agent, no matter how innocently it was made. *See Molt*, 589 F.2d at 1252.

█ The Court hereby makes the following findings of fact with respect to Agent McCrossan's procurement of the materials from Mr. Mitchell. Agent McCrossan first contacted Mr. Mitchell on the morning of April 27, 2001, after receiving information that Mr. Mitchell resigned from Bro–Tech. They met at Mr. Mitchell's home. Agent McCrossan knew that Mr. Mitchell had been the IT Manager of the company since 1994, and asked Mr. Mitchell if he had any documents, files or diskettes in his possession. Mr. Mitchell said no. Hearing Transcript at 10–12.

On May 2, 2001, Mr. Mitchell paged Agent McCrossan. Following the page, Agent McCrossan went to Mr. Mitchell's home. Hearing Transcript at 12–13; Mitchell Aff. at ¶ 1. Mr. Mitchell stated that he was in possession of Bro–Tech property comprising two data tapes and a catalog listing the files contained on those tapes. Mitchell Aff. at ¶ 2. Mr. Mitchell expressed concern, however, that giving Agent McCrossan the materials might cre-

ate legal problems for Mr. Mitchell with Bro–Tech, because the materials were Bro–Tech's property. Hearing Transcript at 142–43. Agent McCrossan advised Mr. Mitchell that a trial subpoena would be issued by Mr. Poluka, the assistant U.S. Attorney in this case, for the tapes. Hearing Transcript at 148; Defendants' Hearing Exhibit 28, at 2. Agent McCrossan then took the materials from Mr. Mitchell.

Based on his conversation with Agent McCrossan, Mr. Mitchell believed that a subpoena was "in the works" and that he therefore "had a legal obligation to turn over the tapes and catalog to Agent McCrossan...." Mitchell Aff. at ¶ 3. If Agent McCrossan had not mentioned a subpoena that day, Mr. Mitchell would not have turned over the materials. *Id.* But no subpoena had been issued, and, at that time, Agent McCrossan did not know whether he could get such a subpoena. Hearing Transcript at 149. A trial subpoena dated May 9, 2001, was later served on Mr. Mitchell by Agent McCrossan. Government's Hearing Exhibit 6. The subpoena was ineffective, however, because it did not comply with Federal Rule of Criminal Procedure 17(c); there was no court order authorizing pretrial issuance of a subpoena, and no trial date had been set.

The Court accordingly finds that Mr. Mitchell's consent was not voluntary, because he believed that he had to consent to turning over the materials based on Agent McCrossan's misrepresentation, however innocent, that the materials would be subpoenaed. Mitchell Aff. ¶ 3.

The government has suggested no other basis on which to justify the seizure of the materials. There has been no evidence presented that there was any reason to believe that the materials were incriminating. Even if there had been probable cause to believe that the materials constituted evidence of a crime, there is no basis

to find exceptional circumstances to obviate the need for a warrant.