UNITED STATES of America, Appellant,

v.

Henry A. MOLT, Jr., et al., Appellees.

Nos. 78–1812 to 78–1818.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Nov. 17, 1978.

Decided May 29, 1979.

Peter F. Vaira, U. S. Atty., Walter S. Batty, Jr., Thomas E. Mellon, Jr., Asst. U. S. Attys., Philadelphia, Pa., for United States.

Malvin Lee Skaroff, Skaroff & Skaroff, Philadelphia, Pa., for Robert A. Udell.

Edward F. Kane, Kane, Pugh, Anderson, Subers & McBrien, Norristown, Pa., for Henry A. Molt, Jr.

Before GIBBONS and WEIS, Circuit Judges, and DUMBAULD, District Judge.*

## OPINION OF THE COURT

DUMBAULD, Senior District Judge:

Defendants were indicted in six indictments containing numerous counts charging a conspiracy to smuggle snakes and other reptiles into the United States in violation of the Act of December 5, 1969, 18 U.S.C. 43, commonly known as the Lacey Act. The District Court granted defendants' motion to dismiss counts based upon alleged violations of the law of Fiji and upon alleged violations of the law of Papua New Guinea.

The applicable statute, 18 U.S.C. 43(a)(2), provides in pertinent part:

> Any person who . . . delivers, carries, transports, or ships, by any means whatever, or causes to be delivered, carried, transported, or shipped for commercial or noncommercial purposes or sells or causes to be sold in interstate or foreign commerce any wildlife taken, transported, or sold in any manner in violation of any law or regulation of any . . . foreign country . . . shall be subjected to the penalties prescribed in subsections (c) and (d) of this section.

The District Court held, and we agree, that the foreign laws and regulations referred to in the above passage are laws and regulations designed and intended for

---

* Edward Dumbauld, United States Senior District Judge for the Western District of Pennsylvania, sitting by designation.

the protection of wildlife in those countries.[1]

This interpretation is plainly supported by the legislative history.

The provisions of this bill reflect the urgency of increasing protection for those species of fish and wildlife whose continued existence is presently threatened. It will prohibit the importation into the United States of endangered species, and it directs the Secretary of State to seek similar action by foreign countries. Thus, by gradually drying up the international market for endangered species, it should help tremendously in reducing the poaching of any such species in the country where it is found.

\* \* \* \* \* \*

On the international level, the purpose is similar. By prohibiting the sale in the United States of wildlife protected by a foreign government, the demand for poached wildlife from that country will be sharply reduced. In addition, however, such a law is also designed to promote reciprocity. If we assist a foreign country in enforcing its conservation laws by closing our market to wildlife taken illegally in that country, they may in turn help to enforce conservation laws of the United States by prohibiting the sale within their borders of wildlife taken illegally within the United States.[2]

The District Court held a hearing, in accordance with Rule 26.1, FRCrP,[3] at which experts on the laws of Fiji and Papua New Guinea testified.

■ The District Court also held (452 F.Supp. at 1204), and we agree, that the Fiji law is not a law for the protection of wildlife, but a revenue law. The expert witness testified that at the relevant time period Fiji had no laws relating to prohibition of export of wildlife. (App. 20). The general prohibition of all exports, unless the customs formalities are complied with, is simply ancillary to the collection of export duties. The Customs ordinance upon which the Government relies is plainly merely a revenue law and does not trigger the applicability of the Lacey Act.

■ With respect to the Papua New Guinea law, however, we are satisfied that the pertinent provision does amount to a protection of wildlife. These regulations (see 452 F.Supp. at 1205) deal specifically with "prohibited exports" of "certain goods." They are not, like the Fiji ordinance, applicable to all goods unless customs formalities are complied with. Item 5 in the schedule of prohibited exports refers to "Fauna (other than animal products of the pastoral or fishing industries)." This clearly indicates that protection is contemplated for wildlife other than the conventional products of commercial agriculture

---

1. *U. S. v. Molt,* 452 F.Supp. 1200, 1204 (E.D.Pa. 1978). Thus, as the District Court's opinion points out, the Lacey Act would not be violated by transportation of wildlife in a foreign country in a vehicle without registration plates or driver's license as required by the local law there. Defendants' objections to the constitutionality of the Lacey Act were not ruled upon by the District Court, but are patently frivolous. The Act does not delegate legislative power to foreign governments, but simply limits the exclusion from the stream of foreign commerce to wildlife unlawfully taken abroad. The illegal taking is simply a fact entering into the description of the contraband article, just as if importations of wine or automobiles were restricted to bottles bearing an official foreign designation of *appellation controllée* or cars bearing indicia of a foreign safety inspection. Congress could obviously exercise its plenary power over foreign commerce in such a manner if it so chose. *Gibbons v. Ogden,* 9 Wheat. 1,

192–93, 6 L.Ed. 23 (1824); *U. S. v. Curtiss-Wright Corp.,* 299 U.S. 304, 322–29, 57 S.Ct. 216, 81 L.Ed. 255 (1936); *Kentucky Whip & Collar Co. v. Illinois Central R.R. Co.,* 299 U.S. 334, 347–49, 57 S.Ct. 277, 81 L.Ed. 270 (1937); *U. S. v. Forsythe,* 560 F.2d 1127, 1137 (C.A.3, 1977) [foreign law merely delineates "predicate offense"]. See also *U. S. v. Sharpnack,* 355 U.S. 286, 294, 78 S.Ct. 291, 2 L.Ed.2d 282 (1958).

2. 91st Cong., 1st Sess.S.Rep.No. 91–526, 3, 12 (1969), U.S.Code Cong. & Admin.News 1969, pp. 1413, 1415.

3. "The Court, in determining foreign law, may consider any relevant material or source, including testimony ·. . . .. The court's determination shall be treated as a ruling on a question of law."

and fisheries. The fact that exportation of fauna is allowed if permission of the administrator is obtained does not detract from the protection accorded by the provision. Undoubtedly in appropriate cases it would be in the public interest or for the advancement of science, an international enterprise in the area of herpetology as well as medicine, physics, and other more familiar fields of co-operative international endeavor for the public good, for particular shipments to be authorized. Perhaps even some of defendants' shipments, destined for the Philadelphia zoo, might have been authorized if they had chosen to respect the law of the host state. Not having done so, they cannot complain of the consequences.

The expert witness, an Australian Federal Judge with extensive practical experience (App. 38), definitely stated that the Papua New Guinea regulation under consideration was one for the protection of fauna (App. 40–41). The District Court overlooked the specific character of the testimony given by Judge James Staples and focussed upon the breadth of legislative power delegated to provide for the "peace, order, and good government," of the territory involved.

However, such broad language, akin to the generality of the Preamble to the United States Constitution, while obviously including within its scope the particular area of wildlife protection, does not detract from the specific provisions of the applicable regulations relating to protection of fauna. Those regulations should therefore be deemed to be foreign law of the sort referred to in the Lacey Act.

Therefore the judgment below is affirmed with respect to dismissal of counts based on the Fiji transactions, but must be reversed with respect to counts based on the Papua New Guinea transactions.

The prosecution with respect to the latter counts shall therefore proceed in due course to trial. In this connection we wish to call to the attention of the parties that a prior decision of this Court, *U. S. v. Molt,* 3d Cir., 589 F.2d 1247, decided on December 28, 1978, held that certain evidence obtained by

illegal seizure, together with any "fruit of the poisonous tree" should be suppressed. It is quite possible that elimination of such evidence may impair the viability of the Government's case with respect to the counts which remain for trial. Prudence and conservation of professional time and effort, as well as economy of judicial administration, would seem to require careful analysis of the status of the case by the attorneys involved, and its handling in a manner that will minimize fruitless effort.

Reversed in part and remanded.