# Submission of Aviation Insurance Program
# Claims to Binding Arbitration

In insurance policies issued to air carriers pursuant to authority arising under chapter 443 of title 49, the Secretary of Transportation may include "50–50 clauses," which require that disputes between insurers over coverage liability be submitted to binding arbitration unless the insurers are able to negotiate a settlement in advance, if the use of such clauses is an accepted practice in the aviation insurance business.

49 U.S.C. § 44309 does not preclude the use of binding arbitration to resolve disputes regarding the liability of the United States for losses insured under chapter 443.

50–50 clauses included in insurance policies issued under chapter 443 may include a provision for arbitration under state or foreign law if it is a common practice of the commercial insurance business to resolve liability disputes by reference to the decisional rules of a non-federal sovereign.

September 27, 1996

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
FEDERAL AVIATION ADMINISTRATION

Chapter 443 of title 49 authorizes the Secretary of Transportation to offer insurance and reinsurance to air carriers conducting flights "necessary to carry out the foreign policy of the United States Government." 49 U.S.C. § 44302(b). Apparently, disputes arise from time to time as to whether liability to compensate an air carrier is properly assigned to the policy issued under the Secretary's authority, the so-called "war-risk" insurance, or to the air carrier's general, or "all-risk," policy. You have asked whether such insurance and reinsurance policies issued pursuant to the Secretary's authority may provide for resolution of such disputes under a "50–50 clause." Under a 50–50 clause, the all-risk and war-risk insurers each advance half of the amount payable under their policy at the time of the loss, assuring that the insured air carrier is fully compensated immediately. The 50–50 clause provides that insurers then submit their dispute as to liability to binding arbitration, unless the insurers are able to negotiate a settlement in advance.

There is no constitutional prohibition on the use of binding arbitration to resolve disputes involving a governmental program, *see Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568 (1985), or on the use of binding arbitration to resolve the government's liability to make payments, *see Schweiker v. McClure*, 456 U.S. 188 (1982); *United States v. Erika, Inc.*, 456 U.S. 201 (1982). *See generally Constitutional Limitations on Federal Government Participation in Binding Arbitration*, 19 Op. O.L.C. 208 (1995). This is not to say that there can be no limits

341

on the use of binding arbitration to resolve questions of governmental liability. [1] For example, federal officials may agree to this means of resolution only where there is a basis of authority for doing so. You have asked whether the Administrator of the Federal Aviation Administration ("FAA"), pursuant to a delegation from the Secretary of Transportation, is so authorized.

The statute provides that, in offering insurance and reinsurance, "[t]he Secretary of Transportation may carry out this chapter consistent with the commercial practices of the aviation insurance business." 49 U.S.C. §44308(a). You have represented that use of 50–50 clauses is "widespread" in the aviation insurance industry. We have not sought to verify this factual assertion. If the use of 50–50 clauses is an accepted practice in the aviation insurance business, then we believe that §44308(a) authorizes the Secretary to include such a clause in insurance and reinsurance policies offered under chapter 443 of title 49, United States Code.

We faced a similar question with respect to the Export-Import Bank. The federal statute establishing the Bank provided that it would be a "corporation . . . which shall be an agency of the United States" and that "[i]n connection with and in furtherance of its objects and purposes, the bank is authorized and empowered to do a general banking business." 12 U.S.C. §635(a). We concluded that, under this charter, the Bank "was intended to have similar powers" to those of other banks. *See Arbitration—Export-Import Bank—Sovereign Immunity—Representation of Bank by Department of Justice*, 3 Op. O.L.C. 226, 228 (1979). We held, therefore, that the Export-Import Bank was authorized to include a binding arbitration clause in contracts the Bank entered into as part of "its normal banking operations." *Id.* [2]

The Secretary's authority to enter into 50–50 clauses follows a fortiori from our holding with respect to the Export-Import Bank. There, we inferred from the Bank's structure that it was to have the power to engage in the practices that private banks employ and that this included the use of binding arbitration. The Secretary's authority does not arise by inference from the structure of the war-risk insurance program. Rather, the authority to engage in common commercial practices is express. You have informed us, and we have no reason to doubt, that binding arbitration is such a practice. The Secretary, and by delegation the Administrator of FAA, is therefore statutorily authorized to include the 50–50

---

[1] The use of alternative dispute resolution mechanisms, including non-binding arbitration, generally is authorized by the Administrative Dispute Resolution Act ("ADRA"). *See* Pub. L. No. 101–552, 104 Stat. 2736 (1990). That Act, however, expressly forbids the use of binding arbitration with respect to any arbitration conducted under the ADRA's authority. *See* 5 U.S.C. §580(c). As discussed below, authority to enter into 50–50 clauses is asserted to derive from chapter 443 of title 49. Because the ADRA's limitation applies only to the arbitration entered into under that authority, it does not limit the Secretary's authority to use binding arbitration if that authority exists under title 49 alone.

[2] We have subsequently distinguished the situation where a statute commits a matter, such as the issuance of regulations, to the exclusive and non-delegable discretion of a federal official. In that context, the official is not authorized to vest actual decision-making authority in anyone else, including an arbitrator or arbitration panel. *See Establishment of a Labor Relations System for Employees of the Federal Labor Relations Authority*, 4B Op. O.L.C. 709, 715–16 (1980).

clause binding arbitration provision in war-risk insurance policies issued under chapter 443 of title 49. Our holding regarding the Export-Import Bank did not rest on the fact that the Bank is established formally as a government corporation. Rather, we inferred from the use of the corporate form statutory authority to engage in whatever practices non-governmental corporations might engage in. A governmental entity that is not chartered formally as a corporation might be given the same authority by express statutory provision, such as a provision authorizing a government agency to act in a manner that is consistent with the commercial practices of a given industry. *See Tenaska Washington Partners II v. United States*, 34 Fed. Cl. 434, 442 (1995) (holding that statute authorizing Bonneville Power Administration to operate as a "business enterprise" creates authority to agree to binding arbitration). [3]

You have asked us to consider whether the provisions of chapter 443 — specifically, those at 49 U.S.C. § 44309 — relating to civil actions preclude the use of binding arbitration to resolve disputes regarding the liability of the United States for losses insured under this chapter. Section 44309 waives the United States' sovereign immunity and provides that, when a loss under chapter 443 is in dispute, a person may bring a civil action against the United States in a district court. The section goes on to define the districts in which such a case may be brought, toll the statute of limitations, and provide for interpleader. *See* 49 U.S.C. § 44309.

If § 44309 were the exclusive mechanism for resolving disputes regarding the government's liability under policies issued pursuant to chapter 443, then § 44309 would preclude the use of binding arbitration. We do not read § 44309 as exclusive or as precluding the use of binding arbitration. Nothing in § 44309 states or otherwise indicates that it is meant to be exclusive. More significantly, the structure of chapter 443 strongly suggests that it is not exclusive. The preceding section, 49 U.S.C. § 44308, expressly authorizes the Secretary to settle claims against the United States. *See* 49 U.S.C. § 44308(b)(2)(A). Disputes regarding the liability of the United States may therefore be resolved without ever reaching a district court or ever being subject to the processes of § 44309.

Finally, you have asked whether the 50–50 clause may include a "provision for arbitration in London under British law" or "in New York under the laws of that state." We believe that such a provision is permissible. Federal law often incorporates the law of other sovereigns. Such statutes have frequently been attacked as an impermissible delegation of Congress's legislative power. These challenges have consistently been rejected on the grounds that Congress has not dele-

---

[3] We have reviewed the opinions of the Comptroller General on this subject. These opinions may not carry legally binding effect, although they may be considered for whatever persuasive value they may offer. *See Bowsher v. Synar*, 478 U.S. 714, 733–34 (1986); *Involvement of the Government Printing Office in Executive Branch Printing and Duplicating*, 20 Op. O.L.C. 214, 227 (1996); *Comptroller General's Authority to Relieve Disbursing and Certifying Officials from Liability*, 15 Op. O.L.C. 80 (1991). While those opinions are not entirely consistent with one another, *compare* 22 Comp. Gen. 140 (1942) *with* 8 Comp. Gen. 96, 97 (1928), they broadly adhere to the proposition that government agencies may enter into arbitration agreements where there is authority to do so. *See* 22 Comp. Gen. at 141, 144–45. We are in accord with this proposition.

gated any legislative power. Instead, Congress has made the legislative judgment that a given federal law shall operate in cognizance of and conformity with state or foreign law, whatever that might be. Thus, the federal Assimilative Crimes Act[4] is valid, even though it prospectively incorporates state law adopted after the federal statute was enacted. *See United States v. Sharpnack*, 355 U.S. 286 (1958) (upholding conviction for violation of a state criminal law enacted subsequent to the Assimilative Crimes Act). This rationale has been applied to incorporation of foreign law as well. For example, the Lacey Act makes it a crime for any person "to import, export, transport, sell, receive, acquire, or purchase . . . any fish or wildlife taken, possessed, transported, or sold in violation of . . . any foreign law." 16 U.S.C. § 3372(a)(2). The courts have consistently held that Congress does not delegate any legislative authority by incorporating, even prospectively, foreign law. *See United States v. Lee*, 937 F.2d 1388, 1393–94 (9th Cir. 1991), *cert. denied*, 502 U.S. 1076 (1992); *United States v. Rioseco*, 845 F.2d 299 (11th Cir. 1988); *United States v. Molt*, 599 F.2d 1217, 1219 (3d Cir. 1979). We think it is therefore clear that Congress could have provided that disputes regarding liability be resolved pursuant to the decisional rules of an independent sovereign, be it state or foreign.

Chapter 443 does not include an authorization to utilize state or foreign law *in haec verba*. We believe that the authority to "carry out [chapter 443] consistent with the commercial practices of the aviation insurance business" authorizes the resolution of disputes by whatever decisional rules are common within the aviation insurance business. If, therefore, it is a common commercial practice of the aviation insurance business to resolve disputes pursuant to the decisional rules of a particular state or foreign jurisdiction, then a 50–50 clause may provide that arbitration be pursuant to the rules or laws of such jurisdiction.[5]

Similarly, we see no reason that Congress may not delegate the authority to incorporate the decisional rules of non-federal sovereigns into the insurance program authorized under chapter 443, as long as this delegation is not standardless. *Cf. Skinner v. Mid-America Pipeline Co.*, 490 U.S. 212 (1989) (upholding congressional delegation of taxing power). If it is a common practice of the commercial insurance business to resolve liability disputes by reference to the decisional rules of a non-federal sovereign, then Congress has delegated the Secretary discretion to agree to do so. Moreover, we believe that the statutory injunction, "consistent with the commercial practices of the aviation insurance business," is a sufficient standard to support the delegation to the Secretary. *Compare National Broad-*

---

[4] The Assimilative Crimes Act adopts for each federal enclave the criminal law of the state within which the enclave is located. *See* 18 U.S.C. § 13.

[5] We reiterate that we have not attempted to verify your assertion that many 50–50 clauses provide for arbitration in London under British law and that others provide for arbitration in New York under New York law.

*casting Co. v. United States*, 319 U.S. 190 (1943) (upholding delegation to regulate "as public interest, convenience, or necessity" may require).

RICHARD L. SHIFFRIN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*