F I L E D
United States Court of Appeals
Tenth Circuit

JAN 23 2001

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JOHN F. LEWIS,

Defendant-Appellant.

No. 99-6343

---

**Appeal from the United States District Court
for the Western District of Oklahoma
(D.C. No. CR-99-003)**

---

Submitted on the briefs:

Carl Hughes and Kyle Goodwin, of Hughes, Artus & Goodwin, Oklahoma City, Oklahoma, and Nicholas D. Garrett, of Lawton, Oklahoma, for Defendant-Appellant.

Daniel G. Webber, Jr., United States Attorney, Joe Heaton, First Assistant United States Attorney, Randal A. Sengel, Assistant United States Attorney, Oklahoma City, Oklahoma, for Plaintiff-Appellee.

---

Before **SEYMOUR** , **HENRY** , and **LUCERO** , Circuit Judges.

---

**PER CURIAM.**

---

After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f). The case is therefore submitted without oral argument.

John F. Lewis was convicted by a jury of one count of violating the Lacey Act, 16 U.S.C. §§ 3371–3378. In part, that statute makes it illegal "to import, export, transport, sell, receive, acquire or purchase in interstate or foreign commerce, any fish or wildlife taken, possessed, transported, or sold in violation of any law or regulation of any State." 16 U.S.C. § 3372. The jury found that Mr. Lewis had violated Oklahoma law governing the commercial hunting of captive elk, by capturing wild elk, holding them captive, and organizing at least one commercial elk hunt, without a license for these activities. Mr. Lewis was sentenced to twelve months and one day of imprisonment, and fined $30,000.

Mr. Lewis now appeals, asserting the following errors: (1) the district court improperly denied Mr. Lewis's motion to dismiss, which claimed that a violation of Oklahoma hunting law was not a legitimate basis for a Lacey Act prosecution; (2) the district court erroneously admitted witness testimony; (3) the United States failed to proffer evidence sufficient to support the charges against Mr. Lewis; (4) the U.S. Fish and Wildlife Service violated Mr. Lewis's Fourth Amendment rights by entering his property without a warrant; and (5) the facts relied upon in

-2-

sentencing Mr. Lewis were incorrect. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and, for the reasons discussed below, affirm Mr. Lewis's conviction and sentence.

I. BACKGROUND

Mr. Lewis owns a 320-acre parcel of land near Lawton, Oklahoma, which adjoins the Wichita Mountains National Wildlife Refuge. In October of 1996, the United States Fish and Wildlife Service ("Fish and Wildlife") initiated an investigation into whether Mr. Lewis had been luring elk from the refuge onto his private property. In the course of this investigation, Fish and Wildlife conducted both personal and video surveillance of the fences and gates dividing the Lewis property from the refuge. On several occasions, the agents also entered onto Mr. Lewis's property. These efforts produced videotapes of Mr. Lewis unlocking the government padlock on the gate to the refuge and leaving alfalfa to bait elk, as well as a tape of an elk crossing from the refuge onto Mr. Lewis's property through the open gate.

While this investigation was taking place, Mr. Lewis placed an advertisement in a Dallas newspaper, offering "elk hunting" with "6x6 bulls guaranteed" for $7500. Aple's Supp. App. at 5. A hunter from Texas, responding to this advertisement, came to Mr. Lewis's property to participate in what the

-3-

government refers to as "the hunt." According to testimony at trial, on November 8, 1997, Mr. Lewis and the hunter drove Mr. Lewis's pickup into a fenced-in pen, approximately fifteen acres in size and containing several bull elk, inside Mr. Lewis's property. The hunter then shot one of the bull elk from a distance of about 75 yards. The entire process lasted approximately ten minutes; soon thereafter, the hunter returned with the elk carcass to Texas. Aplt's App. at 286-88.

Finally, at the close of the investigation, the Fish and Wildlife Service executed search warrants at Mr. Lewis's office and several other locations. Among the items discovered by the government were invoices purporting to show that Mr. Lewis had made legitimate purchases of elk from a Texas dealer in exotic animals. Aple's Supp. App. at 1-4. At trial, however, the dealer testified that he had never made any such sale, nor had he created the invoice found in Mr. Lewis's files.

II. DISCUSSION

A. Motion to Dismiss

Mr. Lewis moved to dismiss the indictment on the grounds that the Lacey Act did not apply to him. The district court denied the motion; we review that denial de novo. United States v. McClelland, 141 F.3d 967, 972 (10th Cir. 1998).

Mr. Lewis contends that because he is accused of violating an Oklahoma hunting law, the United States cannot prosecute him under the Lacey Act. According to Mr. Lewis, the Lacey Act cannot apply unless he has violated a state law that relates specifically to wildlife conservation or protection. In support of this argument, Mr. Lewis cites several cases, including United States v. Molt, 599 F.2d 1217 (3d Cir. 1979). Molt held that the Lacey Act required the violation of a law or regulation "designed and intended for the protection of wildlife." Id. at 1218. However, two years after the Molt decision, the Lacey Act was amended by Congress. The Senate report on these amendments clearly indicates Congress' intent to enact a more stringent standard than that set forth in Molt:

> [U]nder a narrow reading of the Molt decision it might be argued that a state's hunting license law which is revenue-producing is not covered by the Lacey Act. However, such a law clearly does relate to wildlife and it is the committee's intent that it be covered by the Act.

S. Rep. No. 97-123 (1981), reprinted in 1981 U.S.C.C.A.N. 1748, 1753. Thus, when a state hunting law is violated, that violation is an adequate basis for a Lacey Act prosecution.

In further support of his argument that it is "well established" that a Lacey Act violation requires the violation of a state statute that protects wildlife, Mr. Lewis cites United States v. Sohappy, 770 F.2d 816 (9th Cir. 1985). Sohappy, however, concerns the authority of state governments to "qualify" Native

-5-

American fishing rights in the interests of conservation. It lends no additional weight to Mr. Lewis's position. Id. at 823.

B. Witness Testimony as to Oklahoma Law

Mr. Lewis's next contention is that the district court erred in permitting a witness to testify regarding Oklahoma law. The admission of expert testimony is reviewed for an abuse of discretion; we may only reverse the trial court if we have a firm and definite belief that it made a clear error in judgment. United States v. Messner, 107 F.3d 1448, 1454 (10th Cir. 1997). However, even if the trial court abuses its discretion, we will not reverse if the error was harmless. Id.

At trial, Dennis Maxwell, the Assistant Chief of Law Enforcement for the Oklahoma Department of Wildlife, was asked by the government to describe the requirements for acquiring an Oklahoma commercial area hunting license. Mr. Lewis objected, arguing that Mr. Maxwell's testimony on this subject would amount to a legal opinion as to Mr. Lewis's guilt or innocence. The trial court overruled this objection, and permitted Mr. Maxwell's testimony.

As a result of this testimony's admission, Mr. Lewis asks us to reverse the district court and overturn his conviction. Relying on Specht v. Jensen, 853 F.2d 805 (10th Cir. 1988), Mr. Lewis effectively contends that Maxwell "articulate[d] the ultimate principles of law governing the deliberations of the jury," rather than

testifying regarding issues of fact. According to Mr. Lewis, Mr. Maxwell's testimony essentially "direct[ed] a verdict, rather than assisting the jury's understanding and weighing of the evidence." Id. at 808.

We disagree. The record indicates that Mr. Maxwell was only permitted to testify as to the general requirements of the Oklahoma law regarding commercial area hunting licenses, not whether the specific conduct of Mr. Lewis violated those requirements. Mr. Maxwell did not state any opinion as to whether the Oklahoma law applied to Mr. Lewis. Aplt's App. vol. III, at 604-05; Aplt's App. vol. IV, at 613-46. Moreover, the district court was sensitive to the risks associated with Mr. Maxwell's testimony, and warned that Mr. Maxwell would not be permitted to state any legal opinions. Aplt's App. vol. III, at 601-02. As such, we conclude that the district court was well within its sound discretion in permitting Mr. Maxwell's testimony.

C. Insufficiency of the Evidence

Mr. Lewis contends that the government failed to proffer sufficient evidence to prove either that the Oklahoma statute applied to him, or that he had knowledge of the statute's requirements. We review the sufficiency of the evidence to support a jury's verdict de novo. United States v. Jackson, 213 F.3d 1269, 1283 (10th Cir. 2000). On appeal, the court asks whether, when considered

-7-

in the light most favorable to the government, a reasonable jury could have found the defendant guilty beyond a reasonable doubt.    United States v. Hanzlicek   , 187 F.3d 1228, 1239 (10th Cir. 1999).

First, Mr. Lewis claims that "a rational jury could not have found beyond a reasonable doubt that the Oklahoma law applied to the Lewis property, nor... that Lewis violated Oklahoma law by his failure to have a commercial elk hunting area license." Aplt's Br. at 20. Lewis claims, for instance, that the government submitted no evidence that the elk on his property were held in captivity, and did not prove that the elk which was killed was not "free to evade the hunter." Aplt's Br. at 19.

However, it appears there was ample evidence from which the jury could conclude that the elk on Mr. Lewis's property were not wild and could not evade a hunt. For instance, the fact that a hunter was able, in less than ten minutes, to drive up in a pickup truck and shoot a bull elk from a distance of 75 yards–an event which the hunter described at trial as being "close" to "shooting fish in a barrel"–might lead a reasonable jury to conclude that that elk could not flee the hunter. Evidence at trial also established that Mr. Lewis's property was surrounded by an eight foot tall, "elk tight" fence, which might also suggest to a reasonable jury that elk within this fence stood little chance of escaping, and hence were not wild.

-8-

Mr. Lewis also fails to explain the contradiction between his claim that the elk were not captive, and his own statements in his Fourth Amendment argument, discussed in section (D), below, that his property was surrounded by an eight-foot fence with locked gates. As such, this Court has little difficulty concluding the Oklahoma statute was appropriately applied to Mr. Lewis and his elk.

Second, Mr. Lewis claims there was no "scintilla" of evidence that he had knowledge of the Oklahoma licensing requirements, and that "voluminous... evidence" as to his actions shows that he lacked such knowledge. Aplt's Br. at 21. The government strongly disputes this contention. It argues that the evidence introduced at trial was sufficient to demonstrate that Mr. Lewis knew he was subject to the Oklahoma statute. This evidence included taped conversations between Mr. Lewis and an undercover Fish and Wildlife agent, in which Mr. Lewis expressed knowledge of the state's requirements for commercial breeders. Aplt's App. at 742-43. The government also presented invoices, seized from Mr. Lewis, which had been falsified to show the purchase of elk. Aple's Supp. App. at 1-4. Because commercial hunting licensees must legally purchase their wildlife, and may not acquire them from the state's wild stock, these invoices would have been a necessary precursor to an application for such a license. Aplt's App. at 614-15.

Considered in the light most favorable to the government, we find this evidence provided an adequate basis for the jury's verdict.

D.  Motion to Suppress Evidence Obtained via Warrantless Searches

Mr. Lewis's next claim is that Fish and Wildlife violated his Fourth Amendment rights by entering upon his property adjacent to the refuge.  Mr. Lewis moved to suppress all evidence obtained during these entries, but the district court denied his motion.   In reviewing a district court order concerning a motion to suppress, we accept the district court's factual findings unless clearly erroneous, and we view the evidence in the light most favorable to those findings. United States v. Little  , 60 F.3d 708, 712 (10th Cir. 1995).  We review de novo the ultimate determination of Fourth Amendment reasonableness.      Id.

Mr. Lewis proposes that under     Katz v. United States   , 389 U.S. 347 (1967), he had a reasonable expectation of privacy in this property, which the government impermissibly violated.  He argues that in surrounding his property with an eight-foot fence, locked gates, and numerous signs reading "No Trespassing" and "Private Game Shelter," he established an expectation of privacy which the government was legally required to respect.

In response, the government relies upon the Supreme Court's reaffirmation of the "open fields" doctrine in     Oliver v. United States   , 466 U.S. 170 (1984).  In

-10-

Oliver, the Court held that even when fields are protected by fences or "No Trespassing" signs, they "do not provide the setting for those intimate activities that the [Fourth] Amendment is intended to shelter from government interference or surveillance." Id. at 179. We agree that Mr. Lewis's "asserted expectation of privacy" in these portions of his property is not an expectation that "society recognizes as reasonable." Id. (internal quotation marks omitted). We therefore conclude that the district court correctly denied Mr. Lewis's motion to suppress the evidence produced by the entry onto his fields.

E. Calculation of Pecuniary Loss

Mr. Lewis's final claim is that the district court applied incorrect facts in determining his sentence. Mr. Lewis disputes the court's decision that he should be sentenced based on the deaths of two elk–one actually killed, and one intended. He argues that there was no evidence to indicate that he entered or intended to enter into an agreement with an undercover Fish & Wildlife agent to kill the second elk. Aplt's Br. at 27-30. In contrast, the government contends that there was ample evidence that Mr. Lewis intended to kill another elk, and that a calculation based on intended loss is appropriate under USSG §2F1.1.

On appeal, we "review the district court's legal interpretation of the guidelines de novo, and review its findings of fact for clear error, giving due

deference to the district court's application of the guidelines to the facts." United States v. Burridge, 191 F.3d 1297, 1301 (10th Cir. 1999). In light of the facts at hand, especially the testimony of Fish and Wildlife Agent Perez, we find the district court reasonably concluded that Mr. Lewis intended to cause the killing of a second elk. Aplt's App. at 655-56, 687-91. Mr. Lewis's sentence was thus not in error.

## III. CONCLUSION

For the foregoing reasons we AFFIRM Mr. Lewis's conviction and sentence.