FILED
United States Court of Appeals
Tenth Circuit

**March 6, 2012**

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

# UNITED STATES COURT OF APPEALS

# TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

No. 10-5079

ANDRE RALPH HAYMOND,

Defendant-Appellant.

---

**Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. No. 4:08-CR-00201-TCK-1)**

---

William D. Lunn of Tulsa, Oklahoma, for Defendant-Appellant

Matthew P. Cyran, Assistant United States Attorney (Thomas Scott Woodward, United States Attorney, with him on the brief), Tulsa, Oklahoma, for Plaintiff-Appellee.

---

Before **TYMKOVICH**, **SEYMOUR** and **ANDERSON**, Circuit Judges.

---

**SEYMOUR**, Circuit Judge.

Andre Haymond was convicted of one count of possession or attempted possession of child pornography in violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2). He appeals various aspects of his conviction. We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

**I.**

On October 1, 2007, FBI Special Agent Rich Whisman conducted an undercover online investigation searching for individuals involved with child pornography. He did so using LimeWire, a peer-to-peer file sharing program that allows users to trade computer files over the Internet.[1] When a user launches LimeWire and inputs a search term, the program seeks to match the term in the names of files that other users have designated for sharing. LimeWire then returns a list of available files containing that term, which the user may select and download.

Agent Whisman launched LimeWire and typed in "8yo," an acronym for "8 year old" which is associated with child pornography. His search returned a list of files on LimeWire containing "8yo" in the filename, along with the location of users sharing those files. One of the users sharing responsive files was located in

---

[1] LimeWire permits sharing of various sorts of computer files, including videos, pictures, and music. It is not limited to pornography. *See, e.g.*, *Arista Records LLC v. LimeGroup LLC*, 784 F. Supp. 2d 398, 410-11 (S.D.N.Y. 2011) (discussing use of LimeWire to download music).

Tulsa, Oklahoma. Using LimeWire's "browse host" function, Agent Whisman reviewed the filenames of all of the files available to download from that user. He observed about seventy files, most of which had filenames suggesting child pornography. He downloaded sixty-two files, each of which he viewed and believed contained child pornography.

The user's internet protocol ("IP") address was subsequently traced to a residential address in Tulsa, Oklahoma, where Mr. Haymond lived with his mother.[2] At the time, Mr. Haymond was eighteen years old, studying computer programing and video game and web design at a nearby community college.

Based largely on results of his LimeWire investigation, Agent Whisman sought a warrant to search Mr. Haymond's residence. He applied for and obtained that warrant on January 16, 2008. It authorized agents and officers to seize and search Mr. Haymond's computer, other digital media, computer passwords, computer security devices, and other items for evidence of child pornography.

Agent Whisman and other FBI agents executed the search warrant on

---

[2] "An IP address is a unique number identifying the location of an end-user's computer. When an end-user logs onto an internet service provider, they are assigned a unique IP number that will be used for that entire session. Only one computer can use a particular IP address at any specific date and time." *United States v. Renigar*, 613 F.3d 990, 992 n.2 (10th Cir. 2010) (quoting *United States v. Henderson*, 595 F.3d 1198, 1199 n.1 (10th Cir. 2010)) (internal quotation marks omitted).

January 23, 2008. They were accompanied by Scott Gibson, an officer with the Tulsa Police Department, and Buddy Carter, an FBI forensic investigator, whose role was to locate and examine the computers and other digital media. Mr. Carter went to Mr. Haymond's bedroom, where he found a computer. They seized the computer's hard drive, along with other items, and took it to the FBI laboratory for forensic examination.

During the January 23 search, Mr. Haymond consented to an interview. Agent Whisman conducted the interview, during which Mr. Haymond made written and oral admissions about his involvement with online child pornography.

Mr. Haymond was subsequently indicted for knowing possession and attempted possession of child pornography in violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2). The government based its case at trial on seven images found during the post-seizure forensic search of Mr. Haymond's computer.[3]

---

[3] The verdict form listed the charged images by exhibit number and JPEG filename, as follows:

1. JPEG_9547776[150135].jpg (Government's Exhibit 8)
2. JPEG_7811072[150568].jpg (Government's Exhibit 9)
3. JPEG_9515008[150135].jpg (Government's Exhibit 10)
4. JPEG_7815168[150568].jpg (Government's Exhibit 11)
5. JPEG_9555968[150135].jpg (Government's Exhibit 12)
6. JPEG_9523200[150135].jpg (Government's Exhibit 13)
7. JPEG_4030464[150027].jpg (Government's Exhibit 14)

(continued...)

Before trial, Mr. Haymond filed a motion to suppress evidence and statements obtained during the search of his home, and the related forensic search of his computer, on the ground that the underlying search warrant was issued without probable cause. The district court denied the motion after holding a hearing.

At trial, Agent Whisman testified about Mr. Haymond's admissions during and after the January 23 interview.[4] He said that Mr. Haymond admitted he was addicted to child pornography and had been accessing it since 2006 using peer-to-peer file sharing programs.[5] In particular, Mr. Haymond admitted to searching for child pornography and downloading it from such programs, most recently from LimeWire. Although Mr. Haymond initially recounted instances in which he had downloaded child pornography inadvertently when trying to download music from LimeWire, he also admitted to doing so purposefully, providing Agent Whisman

---

[3](...continued)
*See* Rec., vol. I at 532-33.

[4] In his brief, Mr. Haymond notes that he and Agent Whisman "agreed on virtually nothing that was said" during the interview. Aplt. Br. at 12. Given our standard of review, *see infra* Section II, we credit Agent Whisman's account. The jury was entitled to believe Agent Whisman's testimony over Mr. Haymond's.

[5] Officer Gibson, who was present at the January 23 interview, similarly testified Mr. Haymond admitted that he downloaded child pornography from LimeWire, that he was addicted to it, and that he would delete the files after downloading them.

with examples of search terms he used specifically to obtain child pornography.[6]

Agent Whisman further testified that Mr. Haymond admitted to a pattern of searching for, downloading, and then deleting child pornography from his computer. Mr. Haymond explained that, "to remove the temptation," every time after he would download and view child pornography he would delete the images or "wipe" them by reformatting his hard drive and reinstalling the operating system. Rec., vol. III at 315. Agent Whisman testified that Mr. Haymond told him this process happened frequently and that he had most recently downloaded and deleted child pornography the day before, on January 22.[7]

Consistent with his oral admissions, Mr. Haymond also wrote out and signed a statement during the January 23 interview indicating he had been downloading child pornography once or twice every month or two, and that after downloading the files, he would clean the registry, reformat his computer's hard drive, and reinstall his Windows operating system.

Agent Whisman also testified that before the agents left Mr. Haymond's home, Mr. Haymond admitted the seized computer was his and that he "was

---

[6] Examples of search terms Mr. Haymond used to locate and download child pornography included: "hard core gay," "rbv," "pthc," "star kiss," and "r@ygold."

[7] It is not clear from the trial testimony whether Mr. Haymond's oral admission concerned manual deletion of particular files, "wiping" his computer by reformatting and reinstalling a new operating system, or both.

responsible for any child pornography found on his computer." *Id.* at 367. Later that afternoon, Mr. Haymond phoned Agent Whisman and asked what type of forensic software the FBI would use to analyze his computer, a question Agent Whisman declined to answer. Before hanging up, Mr. Haymond said he "knew that [the] computer examiner would find stuff on his hard drive and that he had not wiped it, as he said, the day before." *Id.* at 319-20.

Mr. Carter, the FBI forensic investigator, testified he examined Mr. Haymond's computer using Forensic Toolkit ("FTK"), a specialized software program. FTK recovered a total of 60,000 graphics and video files from the computer's hard drive, including its unallocated space.[8] Using FTK, Mr. Carter compiled the files into a viewable format. After viewing all of the files, he and Agent Whisman found about seventy files they believed contained child pornography.[9] Among those seventy or so files were the seven images that formed the basis of Mr. Haymond's conviction. Mr. Carter also testified the hard drive on which the charged images were found had been manufactured in Korea.

_____

[8] The "unallocated space" of a computer's hard drive consists of files which do not have a formal file structure and can include deleted files. It is "where deleted data is stored before it is then overwritten with new data." *United States v. Otero*, 563 F.3d 1127, 1131 (10th Cir. 2009).

[9] Although Mr. Carter and Agent Whisman testified there were between seventy and seventy-eight images of child pornography on Mr. Haymond's computer, at sentencing the probation office indicated that only nine images could be confirmed as depicting minors.

The hard drive and the charged images were admitted and published to the jury. Forensic analysis indicated the charged images somehow had been deleted and lacked metadata.[10] It revealed little else. In particular, there was no forensic evidence to show the origin of the images or how they had been deleted – that is, whether by the user or by the computer's automated processes with no prompting at all from the user.

Two other government witnesses testified about the charged images. After holding a *Daubert* hearing[11] and over Mr. Haymond's objection, the district court permitted Dr. Sarah Passmore, a board-certified pediatrician, to testify as an expert pursuant to Federal Rule of Evidence 702. She testified that, in her expert opinion, the images depicted boys under the age of eighteen.

Dr. Passmore's testimony was corroborated by Immigration and Customs Enforcement Special Agent Mike Jackson. Agent Jackson viewed the seven charged images and recognized the two boys in the photos. He testified that the seven charged images are part of a larger series of photographs identified by the National Center for Missing and Exploited Children as the "Brad and Bry" series. Agent Jackson participated in an investigation into the original production of this

---

[10] Metadata, which is commonly described as "data about data," is defined as "[s]econdary data that organize, manage, and facilitate the use and understanding of primary data." *Black's Law Dictionary* 1080 (9th ed. 2009).

[11] *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

series of images. The 2004 investigation revealed that the original photographs were taken sometime in or around 2000 in Spring Hill, Florida. During the investigation, Agent Jackson identified and met with the two boys depicted in the images. He also met the boys' mother. He testified that he had viewed the boys' original birth certificates and driver's licenses. The boys were between twelve and fourteen years old when the photos were taken.[12]

In addition to the charged images, the government introduced evidence from Agent Whisman's undercover LimeWire investigation. This evidence included the list of LimeWire files Agent Whisman found on Mr. Haymond's computer in October 2007, along with the child pornographic content of three of those files.[13] The district court admitted this evidence pursuant to Federal Rule of Evidence 404(b).

At the close of the government's case and again at the close of trial, Mr. Haymond moved for judgment of acquittal on grounds of insufficient evidence. *See* Fed. R. Crim. P. 29. The district court denied both motions. The jury returned a verdict of guilty. The district court sentenced Mr. Haymond to thirty-eight months in prison and ten years of supervised release.

---

[12] Although the government attempted to admit into evidence redacted copies of the boys' birth certificates, the court excluded the documents as hearsay.

[13] It is undisputed that the three LimeWire files depicted boys aged six to ten years old in sexually explicit situations.

On appeal, Mr. Haymond contends the evidence at trial was insufficient to support his conviction. He also argues the district court erred in denying his motion to suppress and by permitting Dr. Passmore to testify as an expert.

**II.**

We first consider Mr. Haymond's contention that the evidence was insufficient to support his conviction. We review sufficiency of the evidence claims de novo. *United States v. Ramos-Arenas*, 596 F.3d 783, 786 (10th Cir. 2010). In doing so, "[w]e review the evidence and its reasonable inferences in the light most favorable to the government, to determine whether a reasonable jury could find the defendant guilty beyond a reasonable doubt." *Id.* "We may not disturb the jury's credibility determinations nor weigh the evidence." *United States v. Wardell*, 591 F.3d 1279, 1287 (10th Cir. 2009). "We will reverse a conviction only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Willis*, 476 F.3d 1121, 1124 (10th Cir. 2007) (internal quotation marks omitted).

Mr. Haymond was convicted of one count of possessing child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). At the time, the statute provided for punishment of any person who

> knowingly possesses . . . any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which was produced using materials which have been mailed or so

-10-

shipped or transported, by any means including by computer, if –
        (i) the producing of such visual depiction involves the use
        of a minor engaging in sexually explicit conduct; and
        (ii) such visual depiction is of such conduct . . . .

18 U.S.C. § 2252(a)(4)(B) (2006).[14]

The district court instructed the jury that the government was required to prove the following five elements beyond a reasonable doubt:

1.     Defendant knowingly possessed one or more matters containing a visual depiction;

2.     The production of such visual depiction involved the use of a minor engaging in sexually explicit conduct;

3.     The visual depiction is of a minor engaging in sexually explicit conduct;

4.     Defendant knew that at least one of the performers in the visual depiction was a minor engaged in sexually explicit conduct; and

5.     The visual depiction had either: (1) been mailed, shipped, or transported in interstate or foreign commerce, by any means, including a computer, or (2) been produced using materials that had been mailed, shipped, or transported in interstate or foreign commerce, by any means, including a computer.

Rec., vol. I at 519.  Mr. Haymond challenges the sufficiency of the evidence with

---

[14] The statute has since been amended.  *See* Enhancing the Effective Prosecution of Child Pornography Act of 2007, Pub. L. No. 110-358, § 203(a)(2), 122 Stat. 4003 (2008) (criminalizing "knowingly accessing" child pornography with intent to view).  We review Mr. Haymond's challenge to the sufficiency of the evidence challenge under the statute as it existed at the time of the charged offense.

respect to whether he knowingly possessed the charged images of child pornography and whether the images had a sufficient connection to interstate commerce.

**A.**

Mr. Haymond first claims the evidence was insufficient to establish he "knowingly possessed" child pornography. He argues the government failed to establish this element of the offense because it presented no evidence he knew of or had the ability to access and control the charged images.

As an initial matter, Mr. Haymond points out that possession of child pornography is an image-specific crime. *See United States v. Dobbs*, 629 F.3d 1199, 1204 (10th Cir. 2011); *see also United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78 (1994). The district court recognized this when it instructed the jury that the government was required to prove its case as to the specific "charged images," noting that Mr. Haymond was "not on trial for . . . any image not contained in Government's Exhibits 8-14." Rec., vol. I at 514. To convict Mr. Haymond under 18 U.S.C. § 2252(a)(4)(B), the government was required to prove he knowingly possessed at least one of the seven charged images listed on the verdict form.

It also is true that "possession" requires, at a minimum, that a defendant have the ability to access and control the images. Although the statute does not define "possession," we have previously defined it as "'the holding or having

-12-

something . . . as one's own, or in one's control.'" *United States v. Tucker*, 305 F.3d 1193, 1204 (10th Cir. 2002) (quoting *Oxford English Dictionary* (2d ed. 1989)).  As in other contexts, possession of child pornography may be actual or constructive.  *Id.*  With respect to the former, the district court instructed: "A person who knowingly has direct physical control over an object or thing, at a given time, is then in actual possession of it."  Rec., vol. I at 521.  As for constructive possession, it instructed: "A person who, although not in actual possession, knowingly has the power at a given time to exercise dominion or control over an object, either directly or through another person or persons, is then in constructive possession of it."  *Id.*  These instructions accord with our case law, *see, e.g.*, *Tucker*, 305 F.3d at 1204, and are undisputed on appeal.

Additionally, for possession of child pornography to be "knowing," a defendant must know the charged images exist.  As we have explained in the analogous context of knowing receipt of child pornography, "defendants cannot be convicted for having the ability to control something that they do not even know exists."  *Dobbs*, 629 F.3d at 1207.  In other words, the defendant's control or ability to control "need[s] to relate to images that the defendant knew existed; otherwise, the defendant's conduct with respect to the images could not be deemed to be *knowing*."  *Id.*  To convict Mr. Haymond, the government was required to prove he knew of and also controlled (or at least had the ability to access and control) the particular images that formed the basis of the conviction.

-13-

Mr. Haymond argues the government failed to meet this burden because it presented no evidence that he knew these specific images were on his computer or that he had the ability to access them once they were in the unallocated space of his computer. Relying primarily on our decision in *Dobbs*, 629 F.3d 1199, he suggests the charged images were inadvertently downloaded to his computer from internet web pages. He argues we must reverse his conviction because, as in *Dobbs*, there was no forensic evidence to indicate he ever saw, clicked on, enlarged, or otherwise accessed or controlled the specific images charged.

*Dobbs* was decided in an analogous context – a conviction for knowing receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2). In that case, unlike this one, the conviction was based on images found in the cache of the defendant's computer. *See id.* at 1201. There was no serious dispute in *Dobbs* that the charged images originated from web pages or that they had been downloaded to Dobbs' computer through his browser's automatic caching function. *See id.* at 1201-04. As the government's forensic specialist in *Dobbs* explained, "[W]hen a person visits a website, the web browser automatically downloads the images of the web page to the computer's cache . . . regardless of whether [the images] are displayed on the computer's monitor." *Id.* at 1201. Thus, "a user does not necessarily have to see an image for it to be captured by the computer's automatic-caching function." *Id.*

Although there was ample evidence in *Dobbs* to indicate the defendant had

"received" the images from the internet, we reversed the conviction because there was insufficient evidence to establish he did so "knowingly." *Id.* at 1204. We emphasized that "the government presented no evidence [the defendant] had accessed the files stored in his computer's cache, including the two images at issue. And, more tellingly, there was no evidence that he even knew about his computer's automatic caching function." *Id.* We also noted that, as to the two charged images, "there was no evidence presented to the jury that [the defendant] even saw them, much less had the ability to exercise control over them by, for example, clicking on them or enlarging them." *Id.* Without such evidence, we concluded, no reasonable jury could have found the defendant knew the charged images existed on his computer or had the ability to access and control them, either when he visited the originating web pages or later, after the images had been saved to his computer's cache. *Id.* at 1204-05.

Mr. Haymond's reliance on *Dobbs* is unavailing, however. In this case, unlike in *Dobbs*, there was ample evidence from which a reasonable jury could infer Mr. Haymond knew the charged images were on his computer because he searched for and then downloaded them from LimeWire. Here, Mr. Haymond admitted to frequently searching for and downloading child pornography from LimeWire. Mr. Carter testified he found the LimeWire program on Mr. Haymond's computer. The government also introduced three images of child pornography that Agent Whisman found in Mr. Haymond's shared LimeWire

-15-

folder, which the district court permitted the jury to consider as "proof of . . . [the] absence of mistake," Fed. R. Evid. 404(b), a ruling that is not challenged on appeal. The jury was not required to credit Mr. Haymond's assertions that he inadvertently downloaded child pornography from LimeWire while attempting to obtain music, particularly when he had admitted he was addicted to child pornography and used LimeWire to search for and download it. It was thus permissible for the jury to infer that Mr. Haymond used LimeWire exclusively to search for and download child pornography.[15] Viewing the evidence in the light most favorable to the verdict, we conclude it was sufficient to permit a rational jury to find beyond a reasonable doubt that Mr. Haymond knew the charged images were on his computer once he deliberately selected and downloaded them from LimeWire.

For similar reasons, we conclude the evidence was sufficient to establish Mr. Haymond exercised actual control over the charged images. Unlike the defendant in *Dobbs*, who sought out child pornography on internet websites, Mr. Haymond admitted to seeking out and downloading child pornography through peer-to-peer programs, including LimeWire. As the defense's own forensic specialists testified, downloading from LimeWire does not occur automatically.

_____

[15] Although Mr. Haymond correctly points out that his expert testified the charged images were thumbnails which came from web pages and could not have come from LimeWire, Agent Whisman testified for the government that it was not possible to determine whether the images were thumbnails.

It requires the user to highlight the names of the file or files he wishes to

download and then to press "enter." In contrast to the caching process at issue in

*Dobbs*, which occurs automatically, this type of volitional downloading entails

"control" sufficient to establish actual possession. Accordingly, the evidence

here was sufficient to permit a reasonable jury to conclude beyond a reasonable

doubt that Mr. Haymond "knowingly possessed" the charged images.[16]

**B.**

Mr. Haymond also contends the evidence was insufficient to establish he

knew the charged images depicted minors engaged in sexually explicit conduct.

We are not persuaded.

Mr. Haymond is correct that the "knowledge" requirement of the statute

requires more than establishing he knowingly possessed the charged images. In

*X-Citement Video, Inc.*, 513 U.S. at 78, the Supreme Court held that "the term

'knowingly' in [18 U.S.C.] § 2252 extends both to the sexually explicit nature of

the material and to the age of the performers." Although that case involved a

---

[16] Because we conclude there was sufficient evidence to establish Mr. Haymond knowingly possessed the images by downloading them, we need not decide whether he constructively or actually possessed the charged images after they were deleted and resided in his computer's unallocated space. As a result, *United States v. Flyer*, 633 F.3d 911 (9th Cir. 2011), which held the defendant could not "knowingly possess" child pornography once it had reached his computer's unallocated space, is inapposite. Nor do we decide whether, as the government claims, Mr. Haymond's admissions were sufficient to prove he exercised control over those particular images by deleting them. *Cf. United States v. Bass*, 411 F.3d 1198, 1201-02 (10th Cir. 2005).

conviction for knowing transportation, receipt, and distribution of child pornography under 18 U.S.C. §§ 2552(a)(1) and (a)(2), its holding is not limited to offenses specified in those particular sub-sections of the statute. Relevant here, the *mens rea* requirement of *X-Citement Video, Inc.* applies with equal force in the context of "knowing possession" of child pornography under § 2252(a)(4)(B). *See United States v. Alfaro-Moncada*, 607 F.3d 720, 733 (11th Cir. 2010) (applying *X-Citement Video, Inc.* in context of "knowing possession"); *United States v. Lacy*, 119 F.3d 742, 747 (9th Cir. 1997) (same).

Thus, to convict Mr. Haymond, the government was required to prove he knew that the specific images he was convicted of possessing depicted minors engaged in sexually explicit conduct. Mr. Haymond suggests the government failed to met this burden because it presented no evidence he knew anything about the content of the charged images. But a showing of *means rea* "may and often is inferred from circumstantial evidence . . . ." *United States v. Borg*, 501 F.2d 1341, 1343 (10th Cir. 1974); *see also United States v. Pires*, 642 F.3d 1, 8-9 (1st Cir. 2011) (recognizing principle in context of "knowledge" requirement of 18 U.S.C. § 2252). As we have already held, the jury was presented with sufficient evidence from which to conclude Mr. Haymond used search terms associated with child pornography to find and then download the charged images from LimeWire. In our view, this is determinative. As the Court of Appeals for the First Circuit has explained, evidence that a defendant "deliberately used search terms

associated with child pornography . . . when trolling on LimeWire . . . can support a finding that he knew that the images retrieved contained child pornography." *Pires*, 642 F.3d at 9. We readily conclude that the evidence establishing Mr. Haymond used search terms related to child pornography to obtain the charged images was sufficient to prove beyond a reasonable doubt he knew those images contained child pornography.

## C.

Mr. Haymond also argues the evidence was insufficient to show the seven charged images had a sufficient connection to interstate commerce. We disagree.

As we recently explained in *United States v. Sturm*, 09-1386, ___ F.3d ___ (10th Cir. Feb. 24, 2012) (en banc), to convict a defendant of possessing child pornography in violation of 18 U.S.C. § 2252(a)(4)(B), "the Government was required to prove the visual depictions had been mailed, shipped, or transported in interstate or foreign commerce."[17] *Id.*, slip op. at 13 (citing 18 U.S.C. §§ 2252(a)(2), (a)(4)(B)). At issue in that case was whether this showing required "a specific digital transmission or specific physical object, or merely the substantive content of that transmission or object, [to] cross state lines." *Id.* at

---

[17] The statute also allows the interstate commerce element to be met by showing the visual depiction "was produced using materials which have been mailed or . . . shipped or transported, by any means including by computer." 18 U.S.C. § 2252(a)(4)(B). We need not consider whether the evidence was sufficient to satisfy this prong of the statute.

-19-

14. We held that the term "visual depiction" in § 2252(a)(4)(B) means "the substantive content of an image depicting a minor engaging in sexually explicit conduct." *Id.* at 20. As such, the government "can meet its burden of proving the jurisdictional [interstate commerce] element . . . by introducing evidence from which a reasonable jury could conclude the substance of an image of child pornography was made in a state and/or country other than the one in which the defendant resides." *Id.* at 24.

Here, the government easily met this burden. Agent Jackson testified that he investigated the origin of the original photos which constituted the substantive content of the seven charged images found on Mr. Haymond's computer. He explained these seven photos were part of the "Brad and Bry" series of photographs and were originally taken in Spring Hill, Florida. By presenting evidence that these photos originated in Florida and that the visual depictions were ultimately found on Mr. Haymond's computer in Oklahoma, the government provided sufficient evidence to show the visual depictions had been "mailed, or . . . shipped or transported in interstate or foreign commerce." 18 U.S.C. § 2252(a)(4)(B); *see Sturm*, 09-1386, ___ F.3d at ___, slip op. at 24.

## III.

We turn next to Mr. Haymond's contention that the district court erred in denying his motion to suppress evidence obtained in connection with the warrant-

based search of his home on January 23. "When reviewing a district court's denial of a motion to suppress, we review the district court's factual findings for clear error and consider the evidence in the light most favorable to the Government." *United States v. Zamudio-Carrillo*, 499 F.3d 1206, 1209 (10th Cir. 2007). Determinations relating to the sufficiency of a search warrant are conclusions of law which this court reviews de novo. *United States v. Danhauer*, 229 F.3d 1002, 1005 (10th Cir. 2000). "[W]hile we review the district court's ruling on the sufficiency of a search warrant de novo, we do not review de novo the determination of probable cause by the issuing judge or magistrate." *United States v. Perrine*, 518 F.3d 1196, 1201 (10th Cir. 2008). Instead, we give great deference to the issuing judge's finding of probable cause. *United States v. Renigar*, 613 F.3d 990, 993 (10th Cir. 2010). "We ask only whether, under the totality of the circumstances presented in the affidavit, the . . . judge had a 'substantial basis' for determining that probable cause existed." *Id.* at 994 (quoting *United States v. Tuter*, 240 F.3d 1292, 1295 (10th Cir. 2001)) (internal quotation marks omitted).

Mr. Haymond argues the affidavit Agent Whisman submitted in support of the search warrant was insufficient to establish probable cause to search his home for evidence of child pornography. We disagree. An affidavit is sufficient to support probable cause if "the facts presented in the affidavit would warrant a [person] of reasonable caution to believe that evidence of a crime will be found at

the place to be searched." *Id.* (alteration in original) (internal quotation marks omitted). After reviewing Agent Whisman's affidavit and the transcript of the district court's evidentiary hearing on Mr. Haymond's motion to suppress, we agree with the district court that the affidavit satisfied this requirement. Notably, Agent Whisman's affidavit described in detail his undercover LimeWire investigation, including the fact that he observed a user with an IP address linked to Mr. Haymond's residence who had numerous files of child pornography available for other LimeWire users to access, view, and download. This information would cause a reasonable person to believe evidence of child pornography would be recovered from Mr. Haymond's residence.

Mr. Haymond asserts the information in the affidavit was stale because Agent Whisman's LimeWire investigation took place on October 1, 2007 and the search warrant was not obtained until 107 days later, on January 16, 2008. We considered and rejected a similar claim in *United States v. Perrine*, 518 F.3d 1196, 1205-06 (10th Cir. 2008), a case involving possession of child pornography. The defendant there raised a staleness claim on the ground that 111 days had elapsed between the initial incidents linking him to online child pornography and the date on which agents submitted the affidavit in support of the search warrant. *Id.* We rejected this staleness claim in large part on the observation that "images of child pornography are likely to be hoarded by persons interested in those materials in the privacy of their homes." *Id.* at 1206 (quoting

*United States v. Riccardi*, 405 F.3d 852, 861 (10th Cir. 2005)).  On the record before us, we see no reason to depart from the rationale and result we reached in *Perrine*.[18]  We therefore reject Mr. Haymond's claim that the information about the LimeWire investigation was too stale to support probable cause.  The district court did not err in denying Mr. Haymond's pretrial motion to suppress.[19]

## IV.

Finally, Mr. Haymond asserts the district court erred in permitting Dr. Passmore, a board-certified pediatrician, to testify as an expert about the ages of the individuals shown in the charged images.  *See* Fed. R. Evid. 702.  After looking at the charged images, she opined they depicted boys under the age of eighteen.  In doing so, she relied in part on the so-called "Tanner Staging" methodology.  *See United States v. Hamilton*, 413 F.3d 1138, 1143-44 (10th Cir. 2005) (describing Tanner Staging methodology); *United States v. Katz*, 178 F.3d 368, 370-71 (5th Cir. 1999) (similar).  Mr. Haymond claims Dr. Passmore's opinion, and particularly her application of Tanner Staging, fails to satisfy the standards for expert testimony enunciated in *Daubert*, 509 U.S. 579.  As a result,

[18] Although Mr. Haymond argues the affidavit's "boilerplate" assertions concerning child pornography collectors were insufficiently particularized, he does not contend those assertions are clearly erroneous.

[19] Because we affirm on this ground, we need not address Mr. Haymond's alternative argument that the good faith exception to the exclusionary rule established in *United States v. Leon*, 468 U.S. 897 (1984), does not apply.

he argues, the district court committed reversible error in allowing her to express her opinion.

We need not decide this issue because even assuming the district court erred in admitting Dr. Passmore's statements, "we will reverse a resulting conviction only if the court's error was not harmless—that is, if 'it had a substantial influence on the outcome or leaves one in grave doubt as to whether it had such effect.'" *United States v. Roach*, 582 F.3d 1192, 1207 (10th Cir. 2009) (quoting *United States v. Bornfield*, 145 F.3d 1123, 1131 (10th Cir. 1998)); *see also United States v. Lewis*, 240 F.3d 866, 869 (10th Cir. 2001) (harmless error test applies in the context of expert testimony); Fed. R. Crim. P. 52(a). "The question is not whether, omitting the inadmissible statements, the record contains sufficient evidence for a jury to convict the defendant," but whether the evidence had a substantial influence on the jury's decision. *United States v. Tome*, 61 F.3d 1446, 1455 (10th Cir. 1995). We conduct a harmless error review by reviewing the record de novo. *Id.*

Here, the government provided other sufficiently strong evidence to permit the conclusion that Dr. Passmore's testimony had no substantial effect on the outcome of Mr. Hayden's trial. *See, e.g.*, *United States v. Cass*, 127 F.3d 1218, 1225 (10th Cir. 1997) ("[G]iven the wealth of evidence put forth by the prosecution, we believe the error was harmless."). ICE Special Agent Mike Jackson testified that the charged images depicted known victims who were

between twelve and fourteen years old when the underlying photographs were taken. His testimony was not based simply on a review of the one-dimensional charged images, but on a full-fledged investigation into the production of the photographs, including interviews of the boys and their parents.

Moreover, the jury itself had the images to review and assess regarding whether they depicted minors. Certainly in some child pornography cases expert testimony may be necessary to determine whether the young persons depicted in the images were minors. But "[o]ur precedents suggest that experts are not necessarily required to aid in such factual determinations." *Riccardi*, 405 F.3d at 870 (citing *United States v. Kimler*, 335 F.3d 1132, 1144 (10th Cir. 2003); *United States v. Harms*, 371 F.3d 1208, 1212 (10th Cir. 2004)); *see also Katz*, 178 F.3d at 373 (noting that "whether the age of a model in a child pornography prosecution can be determined by a lay jury without the assistance of expert testimony [ ] must be determined on a case by case basis"). We have previously allowed jurors to determine for themselves whether images involved minors without the benefit of expert testimony, particularly when the subjects were sufficiently young. *See Riccardi*, 405 F.3d at 870-71; *cf. United States v. Stanley*, 896 F.2d 450, 452 (10th Cir. 1990) (holding it was permissible for postal inspector to provide lay opinion testimony that photographs depicted children in sexually explicit conduct).

Here, even defense counsel conceded in his closing argument that the

images appeared to be of minors: "Now, I will concede that when you look at these pictures that initially they look like these could be images of persons that are under the age of 18." Rec., vol. III at 665-66. He then tried to convince the jury that "looks can be deceiving," *id.* at 666. In light of Agent Jackson's cogent testimony, the significant age difference between minors aged 12 to 14 and adults aged 18, and the jury's ability to see the pictures for themselves, we conclude that error, if any, regarding the admission of Dr. Passmore's testimony had no effect on the outcome of the trial. The jury could easily have concluded that the images depicted minors without Dr. Passmore's testimony. Any error in admitting her testimony was therefore harmless.

For the reasons stated above, we **AFFIRM**.